THE CHICAGO TITLE AND TRUST COMPANY, Receiver,

*v.*

THOMAS H. SMITH, Trustee.*

*Filed at Ottawa October 11, 1895.*

1. RECEIVERS—*a receiver takes subject to all valid liens.* A receiver's possession of property is subject to all valid and existing liens upon it at the time of his appointment, and does not divest a lien previously acquired in good faith.

2. CORPORATIONS—*right to assigned accounts as between receiver and previous trustee.* A transfer to a trustee of accounts belonging to a corporation, duly made and noted on the books of the corporation under authority of the board of directors and accepted by the trustee in writing, with notice from him to the parties whose accounts are assigned and also to the persons for whom he is acting as trustee, is sufficient to vest in the trustee the right to the money de-

*The cases of *Juilliard et al.* v. *The James H. Walker Company,* and *Carton* v. *The James H. Walker Company,* were consolidated with the above case and considered and decided with it.

rived from the accounts, although subsequently, on the same day, a bill was filed for a receiver and to wind up the corporation.

3. SAME—*preferences by insolvent corporation—winding up.* A preference by the assignment of accounts, made by a corporation, is not defeated by section 25 of the act on Corporations, (Rev. Stat. 1874, p. 290,) providing for the winding up of the business of corporations by suits in equity, although such suit is brought immediately after the assignment.

4. SAME—*preference by corporation as affected by the act on voluntary assignments.* The assignment of a small fraction of the estate of a corporation to a trustee, without any intent to make a general assignment, is not affected by the act on voluntary assignments prohibiting preferences, when questioned in a court of chancery in a suit to wind up the affairs of such corporation. *Farwell* v. *Cohen,* 138 Ill. 216, distinguished.

*Smith* v. *Chicago Title and Trust Co.* 54 Ill. App. 517, and consolidated case, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. SAMUEL P. MCCONNELL, Judge, presiding.

Early in 1893 the James H. Walker Company, a corporation organized in 1892, was engaged in the wholesale and retail dry goods trade in the city of Chicago. Prior to the organization of the company business had been transacted by a partnership under the same name, composed of Columbus R. Cummings, William B. Howard and James H. Walker. The stockholders of the corporation were: James H. Walker, 3107 shares, $310,700; C. R. Cummings, 6605 shares, $660,500; William B. Howard, 4751 shares, $475,100; James H. Walker, Jr., 535 shares, $53,500; George S. Willits, two shares, $200; total, 15,000 shares, $1,500,000. James H. Walker was president and looked after the merchandising, while William A. Mason was its vice-president until March, 1893, and at all times its treasurer, and looked after the finances. In March, C. C. Lay became the vice-president, and, as Walker testifies, was practically the head over all. Walker, Lay, Hartz, (the secretary,) Mason and Cummings were the directors,

and Cummings, Lay and James H. Walker made up the executive committee. Its duties were as follows: "The executive committee shall exercise a general supervision of the entire business of the company, the management of every department, and all the property of the company shall be under their control, subject, however, to the direction of the board of directors. The several officers and employees of the company shall be responsible to the executive committee for a proper and faithful discharge of their several duties, and make such reports to the executive committee touching the business coming under their charge, as such committee, from time to time, may require; and between the meetings of the board of directors the executive committee shall have the powers of the board. In the absence of any member of the committee, such member may designate a proxy to act with the full powers of the member."

About the middle of May, Cummings, by his guaranty, secured credit for the company at the Union National Bank, upon the promise of the company to give him an equal amount of accounts to secure him. July 25 the company assigned certain open accounts to Mason, as trustee for Cummings, to secure his guaranty, Mason drawing off a list thereof from the books, and seven or eight days thereafter the open accounts were turned into notes. Walker, the president, signed the company's name to this assignment. On August 3 a meeting of the board of directors of the company was held, and on motion of Willits, (who had been a director until then,) representing Howard's interest, the following resolution was adopted:

"Whereas, efforts are being made, in New York and elsewhere, to raise money to help this company out of its existing difficulties; and whereas, certain of the creditors are becoming importunate and pressing in their demands for payment; now, therefore, be it

"*Resolved*, That, pending the arrival of the expected assistance from New York, the treasurer of the company

be and he is hereby authorized to endorse over or assign any drafts, bills and accounts receivable of the company which may be in his hands, in payment of or security for any claim against or debts of this company; and he is also hereby authorized to assign and transfer any accounts due to the company in the same manner to such creditors, or to such other persons as they may designate, for their protection."

The minutes of the corporation meeting show that at this same meeting "Mr. Willits tendered his resignation as director of the company, which was accepted, and, on motion, Mr. Irving T. Hartz was elected in his place." Also, that Lay, the vice-president, presided at the meeting, and that all the directors except Walker and Cummings were present, and that on the same day Cummings' written consent to and ratification of the meeting was received, as follows:

"*August 3, 1893.*

"I hereby consent to the holding of the above meeting as aforesaid, and hereby ratify and confirm all acts and proceedings had at said meeting, and consent that they may have the same effect as if I had been personally present and voted therefor.    C. R. Cummings."

On August 3, immediately after the passage of the above resolution, and in pursuance thereof, Mason, who generally signed all papers in connection with the paying out of money, told Smith, who was assistant credit man for the company, to make out a list of the cash deposits with the corporation by country customers and a list of the employees in the house who had money on deposit with the corporation, and select enough accounts to secure them. Smith did so, and Mason, in the name of the corporation, signed an assignment of the lists of accounts so selected, to Smith, as trustee for the creditors therein named, before nine o'clock A. M., August 4, and Smith at once accepted the assignment in writing. The customers named in the list of depositors were all

residents of Illinois, but not of Cook county, and had money on deposit with the corporation aggregating $33,210.62.   Accounts were assigned on various parties to secure the above customers, which assigned accounts amounted to the sum of $34,264.   In addition to the accounts assigned for the benefit of customers there were assigned accounts, aggregating $7626, to secure employees who had money deposited, etc., whose claims amounted to $6121.23.   For these deposits the corporation acted, in receiving the same, as banker.   The assignments were not consented to by Walker.   Notices of these assignments were sent out by Smith and Mason to the debtors, and on the account books these accounts were marked as transferred to the trustee, and he was proceeding to collect the same.

On the 4th day of August, 1893, A. D. Juilliard, the John B. Claflin Company, a corporation, with others, filed a bill making the James H. Walker Company defendant, by which an indebtedness of several hundred thousand dollars by the defendant was alleged, etc., and asking for the appointment of a receiver for the James H. Walker Company, and on the same day, by an interlocutory order, the Chicago Title and Trust Company and William A. Mason were appointed receivers.   On the next day Mason resigned as receiver.   On August 22 Lawrence A. Carton exhibited his bill in chancery, setting forth a judgment, etc., and asking the appointment of a receiver, and that the business of the corporation be wound up, etc.   An order was entered consolidating this cause with the bill filed by A. D. Juilliard, the John B. Claflin Company, and others, and to the consolidated causes answers were filed, etc.   The Chicago Title and Trust Company, receiver, filed, on December 22, 1892, in the consolidated cause, its petition, setting forth the assignment of accounts to Smith, as trustee, the purpose for which the accounts were assigned, for whose benefit, the amounts thereof, and that the receiver had col-

lected of those accounts the sum of $34,894.10, and prayed the instruction of the court as to its distribution.    Answers were filed by James H. Walker and the National Bank of Commerce of Providence, Rhode Island, wherein they deny that the transfer by the James H. Walker Company was done by proper authority, and deny the validity and legality of the assignment, etc.    Thomas H. Smith, the trustee, answered, setting up the accounts assigned, for whose benefit, and alleging they should be paid to him in trust, etc.    Subsequently, on January 11, 1894, Thomas H. Smith, trustee, filed his petition, making the receiver and others defendants, which petition sets up substantially the same facts as set forth in his answer to the receiver's petition, and praying that the money collected on the assigned accounts by the receiver be ordered paid to him, the trustee.    By stipulation the answers of James H. Walker and the Bank of Commerce to the receiver's petition were to stand as answers to the trustee's petition.    A hearing was had on the petition of the trustee, and it was held by the trial court that the assignment of the accounts to the trustee was invalid and of no effect, and the beneficiaries thereof could only share as general creditors of the James H. Walker Company, and dismissed the petition of the trustee.    The trustee prosecuted an appeal to the Appellate Court, where the decree of the circuit court was reversed and the cause remanded, with directions to the circuit court to grant the prayer of the petition.    The receiver prosecutes this appeal, and assigns error in holding the assignments of the accounts valid and the beneficiaries entitled to a preference therein, and reversing the judgment dismissing the petition.

PARTRIDGE & PARTRIDGE, and WILLIAM C. NIBLACK, for appellant:

The assignments are void as against the rights of general creditors.    Starr & Curtis' Stat. chap. 32, sec. 25;

chap. 72, sec. 13; *Preston* v. *Spaulding*, 120 Ill. 208; *Bank* v. *Rehm*, 126 id. 461; *Oil Co.* v. *Bank*, id. 584; *Farwell* v. *Cohen*, 138 id. 216; *Manufacturing Co.* v. *Caldwell*, 136 id. 163; *Weber* v. *Mick*, 131 id. 520; *Hanchett* v. *Waterbury*, 115 id. 230; *Far-well* v. *Nilsson*, 133 id. 45; *Schroeder* v. *Walsh*, 120 id. 403.

HAMLINE, SCOTT & LORD, for appellee:

There can be no doubt that the accounts were legally transferred by the equitable assignment to Smith,—and this, too, even if no notice was given to the party indebted on the account until after the receiver was appointed. Drake on Attachments, (5th ed.) sec. 527; *Wood-ward* v. *Brooks*, 18 Ill. App. 154.

The receiver stands in the shoes of the corporation, and cannot avoid assignments or transfers made by it. *Swigert* v. *Insurance Co.* 135 Ill. 150.

If an assignment not fraudulent is made to trustees for the benefit of creditors, their assent is not necessary, or their assent will be presumed in all cases if it is for their benefit and contains no unusual clauses or restrictions. 2 Perry on Trusts, sec. 593.

Upon the acceptance of the assignee it becomes immediately operative, and takes full effect as a transfer of the property. Where he is absent, his assent will be presumed. Burrill on Assignments, (5th ed.) sec. 296.

It is good as against creditors even from the time of delivery. *Lowe* v. *Matson*, 140 Ill. 115.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The question presented in this record is, whether the proceeds of certain accounts alleged to have been assigned by the James H. Walker Company, a corporation, to appellant, in trust for certain creditors, shall be applied on the claims of those preferred creditors or retained by the receiver, who was appointed on the same day but subsequent to that assignment, and by it to be distributed as a part of the general fund, on all the debts.

The distribution to be made by a receiver is under the supervision of the chancellor appointing him, and his duties and powers are referable to equitable rules and principles. The assignment of the accounts in this case, if valid, is an equitable assignment, the law affording a. remedy for collection in the name of the original payee. The right to assign a chose in action, even though not a negotiable instrument, has long been recognized, the rigid rules of the common law having been generally relaxed in that respect. Such equitable assignments of choses in action in modern times have received a large protection in courts of law as well as in courts of equity. Where notice is given the debtor of the assignment, he is precluded from doing any act to prejudice the rights of the assignee. Payment by him to the nominal creditor, after such notice of assignment, without the consent of the assignee, will be no defense to an action brought for the benefit of the assignee; neither can the original parties, after such notice, make any compromise or adjustment of the cause of action as against the assignee. *Chapman* v. *Shattuck,* 3 Gilm. 49; *Carr* v. *Waugh,* 28 Ill. 418; *Morris* v. *Cheney,* 51 id. 451; *Littlefield* v. *Story,* 3 Johns. 426; *Andrews* v. *Becker,* 1 id. 411; *Jones* v. *Witter,* 13 Mass. 304; *Leigh* v. *Leigh,* 1 Bos. & Pull. 477.

Whilst the assignee of a non-negotiable chose in action takes the interest assigned subject to all legal and equitable defenses, it is essential that such defenses exist at the time of or before notice of such assignment. It is said in Perry on Trusts (sec. 593): "If an assignment not fraudulent is made to trustees for the benefit of creditors, their assent is not necessary; or their assent will be presumed in all cases, if it is for their benefit, and contains no unusual clauses or restrictions." The author cites many authorities which sustain that proposition. It is said in Burrill on Assignments, (5th ed. sec. 484): "Where the assignment is to a trustee for the benefit of creditors not parties to the deed, it may be laid down as a

general rule in American law that the assent of creditors is not necessary to its validity, and the legal estate or title will pass to the assignee without such assent, so as to prevent a judgment creditor from acquiring a lien, if real, by his judgment, or if personal, by his execution, unless upon the ground of fraud. This rule is said to be founded on the established principle of the common law that it is not necessary to the creation of a trust by deed in favor of any persons, that the *cestui que trust* should either be a party or assent to it. If the trust be for his benefit, the law presumes his assent until the contrary is shown." In *Gibson* v. *Rees*, 50 Ill. 383, it was said (p. 401): "While we might, in accordance with the rule adopted in some American courts, hold that when such a conveyance is executed and recorded we would presume the assent of the creditor, as it would appear to be for his benefit, yet we must hold that such a presumption is liable to be rebutted, and that it would be rebutted by proof that the creditors had refused, upon learning of the conveyance, to avail themselves of its provisions, or if they should delay for a length of time so long as to create a counter presumption to that of assent." The rule being in equity, the assignee will always be protected from any act of the parties after notice, and the former owner and debtor can do nothing, after notice, to defeat the rights of the assignee. *Hughes* v. *Trahern*, 64 Ill. 48.

The filing of the bill by A. D. Juilliard and the John B. Claflin Company was for the purpose of winding up the affairs of the corporation and the appointment of a receiver. The bill filed by Lawrence A. Carton was for the same purpose. To both these bills the corporation is made a party defendant. The appellant in this case was the receiver under those bills, which were consolidated in one suit. A receiver's possession is subject to all valid and existing liens upon the property at the time of his appointment, and does not divest a lien previously acquired in good faith. (*Gere* v. *Dibble*, 17 How. Pr. 31.)

He cannot have the right to take possession of property and hold the same where the owner of the estate for which he is receiver would have no right to do so. A court of equity is bound to respect legal rights and preferences lawfully acquired, and make distribution accordingly. (*Roseboom* v. *Whittaker*, 132 Ill. 81.) The meeting of the board of directors was called in proper form, and the resolution adopted by the board authorized all to be done which was done as to the transfer of the accounts to the trustee for the purpose for which they were so transferred. The assignment was made and noted on the books of the corporation, and the trustee, in writing, accepted the trust, and by telegraph or letter notified the parties whose accounts were assigned to him, and also notified the persons for whom he was acting as trustee. The receiver, when he entered on the discharge of his duties, subsequent to the assignment of these accounts, proceeded to collect the same, and by an arrangement between the receiver and trustee these accounts were, on the books of the receiver, carried on the suspense account. We hold the transfer of these accounts, with notice shown, etc., vested the right to the money derived therefrom in the trustee.

It is urged by the appellant that by section 25 of chapter 32 of the Revised Statutes provision is made for winding up the business of corporations by suits in equity, brought within the provisions of the act by means of a receivership and for the dissolution of the corporation, and it is urged that the maxim, equality is equity, should be applied in the distribution to creditors of the assets of such estate. Whilst equity requires equality in distribution to general creditors, courts of equity must also recognize another equitable maxim, which is, "where there are equal equities the first in order of time must prevail," and where the assignment of these accounts is validly made, an equity exists in those creditors to have the proceeds of those accounts applied to the satisfac-

tion of their debts.   We hold that the provisions of the chapter entitled "Corporations" do not defeat the preferences made by this assignment of those accounts.

It is next contended that section 13 of the Assignment act, which provides that preferences under that act shall be void where an assignment is made, etc., will govern the question here presented.   It is not every assignment of property, even by way of preference to creditors, that will bring the estate of such assignor within the provisions of the general Assignment act.   In *Weber* v. *Mick,* 131 Ill. 520, it was said (p. 533): "Such assignments have always been understood to be instruments voluntarily executed by a failing debtor, by which he assigns to some third person, as assignee or trustee, the whole, or sometimes the bulk, of his property, to be by such trustee distributed among the assignor's creditors in satisfaction of their demands."   In this case a small fraction of the estate of the corporation was assigned to a trustee. There was not, at that time or since, any disposition on the part of the corporation to make a general assignment under the Insolvent Debtors act, and place the whole jurisdiction in the court, where the statute places the jurisdiction of that subject matter.   The general Assignment law is not here involved, nor are its provisions applicable to or controlling on the questions here before the court.   A court of chancery, exercising general chancery jurisdiction as at common law, does not have its power limited or practice controlled by an act applying to another forum, and by a subject matter by that act largely removed from its jurisdiction.   The effect of a partial voluntary assignment, as discussed in *Farwell* v. *Cohen*, 138 Ill. 216, is not applicable to the questions presented on this record.

The judgment of the Appellate Court for the First District is affirmed.                              *Judgment affirmed.*