EUGENE H. PEARSON *et al.* Exrs.

*v.*

CHARLES LUECHT.

*Opinion filed October 25, 1902—Rehearing denied December 10, 1902.*

1. ASSIGNMENTS—*equity will enforce bona fide assignment of judgment.* While a judgment is not assignable at common law or under our statute, yet a court of equity will protect and enforce such assignments if *bona fide* and for valuable consideration.

2. SAME—*assignee of judgment takes all interest of assignor.* Although an assignee of a judgment takes the same subject to all equities existing between the original parties prior to such assignment or between his assignor and a prior assignor, yet if the assignment was made in good faith and for a valuable consideration all interest of the assignor passes to the assignee in equity, and he will be protected accordingly.

3. SAME—*burden of establishing equities to avoid assignment is upon party asserting them.* If an assignor seeks to overthrow an assignment made by him, the burden is upon him to prove equities entitling him to be relieved against his own act; and when a third party has parted with his money in good faith upon the strength of the assignment, a court of equity should have clear and convincing proof of all that is required to avoid the assignment.

*Luecht v. Pearson,* 101 Ill. App. 236, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. HILSCHER, Judge, presiding.

GEORGE SAWIN, for appellants.

WHEELER & SILBER, for appellee:

A judgment is a chose in action, and not assignable at law. *McJilton* v. *Love,* 13 Ill. 496; *Hughes* v. *Trahern,* 64 id. 54; *Olds* v. *Cummings,* 31 id. 189; *Padfield* v. *Green,* 85 id. 529; *Reeve* v. *Smith,* 113 id. 52; *Bank* v. *Burch,* 141 id. 529; *Fortier* v. *Darst,* 31 id. 212; *Sumner* v. *Waugh,* 56 id. 539; *Schmidt* v. *Shaver,* 196 id. 108; *Walker* v. *Dement,* 42 id. 280.

Assignment of a chose in action is purely equitable, and each assignee takes only such title as his assignor

can give, and that title is subject to the equities of every prior assignor. *Fortier* v. *Darst*, 31 Ill. 212; *Sumner* v. *Waugh*, 56 id. 539; *Reeve* v. *Smith*, 113 id. 52; *McAuliffe* v. *Reuter*, 166 id. 496; *Bank* v. *Burch*, 141 id. 529; *Bush* v. *Lathrop*, 22 N. Y. 353; *Ingraham* v. *Insurance Co.* 59 id. 590; *Davis* v. *Bechstein*, 69 id. 442; *Schmidt* v. *Shaver*, 196 Ill. 108.

Excepting as to certain distinct and peculiar classes of choses in action, no estoppel can be invoked against one who has been defrauded of his rights to a chose in action, even though the same may have come into the hands of an innocent purchaser for value, without notice of prior equities. *Barry* v. *Insurance Co.* 59 N. Y. 590; *Cutts* v. *Guild*, 57 id. 229; *Shafer* v. *Reilly*, 50 id. 61; Pomeroy's Eq. Jur. 703, 707-709, and notes; *Poillon* v. *Martin*, 1 Sandf. Ch. 569; *Greene* v. *Warnick*, 64 N. Y. 220.

The equities of an assignee of a chose in action, claiming through one who acted in the capacity of trust and confidence to the original assignor and thereby defrauded him, are subject to the rights of said assignor, even where the chose in action has passed to an innocent purchaser for value and without notice. *Davis* v. *Bechstein*, 69 N. Y. 442; *Reeve* v. *Smith*, 113 Ill. 52; *Bank* v. *Burch*, 141 id. 529; *Sumner* v. *Waugh*, 56 id. 539; *Fortier* v. *Darst*, 31 id. 212; *Olds* v. *Cummings*, 31 id. 189; *Reeves* v. *Kimball*, 40 N. Y. 299; *Schmidt* v. *Shaver*, 196 Ill. 108.

Mr. Justice Boggs delivered the opinion of the court:

This was a bill in chancery filed by the appellee to cancel two assignments of a judgment, in the sum of $1500, which judgment was entered in May, 1896, in favor of the appellee and against the city of Chicago. One of such assignments was executed by the appellee, and purported to assign the judgment to one Charles W. Beck. The other was an assignment of the same judgment, made by Beck to James H. Pearson. Pearson, Beck and the city were made defendants to the bill. The judgment had not been paid, and the city was made a party in order

it might be restrained, by injunction, from paying it during the pendency of the litigation. Service by publication was had upon Beck as a non-resident, and he was defaulted. Pearson and the city of Chicago answered the bill. A hearing was had before the court. Pearson was then living, but was very old and unable to be in court, and the appellee was allowed to testify as a witness. The chancellor, upon consideration of the evidence, entered a decree dismissing the bill for want of equity. The Appellate Court for the First District, on appeal, reversed the decree and remanded the cause, with directions to the trial court to enter a decree canceling the assignments of the judgment and declaring Pearson entitled to receive $500 out of the judgment, and decreeing that Pearson should pay the appellee two-thirds of all interest collected by Pearson from the city on the judgment. Pearson departed this life after the hearing in the trial court, and his executors have prosecuted this appeal from the judgment of the Appellate Court.

Luecht, the appellee, in 1894 had a cause of action against the city for personal injuries. Beck was then president of the People's Casualty, Claim and Adjustment Company, and the appellee placed his claim in Beck's hands for settlement, under a contract that the appellee should pay one-third of such amount as might be recovered. In May, 1896, judgment was entered in the cause in favor of the appellee in the sum of $1500 and costs. On the 19th day of May of the same year the appellee executed an assignment of the judgment to Beck, which assignment was filed in the office of the clerk of the court wherein the judgment had been entered. The appellee claims this assignment was without consideration; that he did not know the paper to which he placed his name was an assignment of the judgment, and that Beck wronged and defrauded him out of all interest in the judgment. On the 27th day of May, 1896, Beck assigned the judgment to Pearson and received therefor

the sum of $1245. It was understood it was doubtful when the judgment could be collected from the city. It drew but five per cent interest, and it appeared from the testimony that the amount paid by Pearson was the fair and reasonable market value for the judgment. Though the bill charged the transfer to Pearson was collusive and for the purpose of enabling Beck to wrong and defraud appellee, and that Pearson had full knowledge that Beck had paid nothing for the judgment, the evidence not only totally failed to support these allegations, but disproved them. Pearson bought and paid for the judgment in good faith, and without any notice of the rights of Luecht, as asserted by his bill.

The theory upon which we are asked to support the judgment of the Appellate Court is, that the judgment against the city of Chicago was not negotiable; that Beck occupied a fiduciary relation to Luecht, and through the influence of the relation, and by false and fraudulent representations, obtained the assignment of the judgment; that Beck therefore obtained no equity in the judgment by the assignment; that, following the holding of this court in *Commercial Nat. Bank* v. *Burch,* 141 Ill. 519, viz., "each successive assignee of a chose in action takes it subject to the existing equities between the original assignor and his immediate assignee," Pearson, though he paid full consideration and without notice of any defect, took the assignment subject to all the equities, claims and rights of Luecht, the appellee. Conceding the legal proposition thus advanced by counsel for appellee to be correct, nevertheless as it appears, without dispute, that the act of Luecht in making the assignment of his judgment, and thereby investing Beck with apparent power and right to dispose of it, enabled Beck to obtain $1245 of the moneys of Pearson, it is the duty of a court of equity to be fully satisfied, by the evidence, of the existence of all of the equities and rights which it is claimed existed between Luecht and Beck.

The judgment in favor of appellee against the city of Chicago was entered on the 18th day of May, 1896, and on the next day appellee executed the assignment to Beck. The bill concedes Beck had a one-third interest in the judgment. Appellee testified that at the time he signed the assignment Beck told him that "now the city ain't going to pay this judgment right off; we have to wait until they get ready to pay it, but you get your money, with interest, and the money is good; but here is some papers which do not amount to much, but I want your name put to this;" that Beck also told him the papers were to give Beck power to collect the money from the city; that nobody was present but he and Beck, and that he did not know he had assigned the judgment to Beck. The assignment bore the names of Julius Bressler and Mary Hansen as witnesses. The testimony of Mary Hansen was to the effect that she and Bressler were present when Luecht signed it.

Luecht tendered with his bill, to be surrendered in court, a note executed by Beck, and payable to himself, for the sum of $1000, bearing interest at the rate of five per cent per annum, dated the 5th day of March, 1898, and due in one year thereafter. In his original and also in his amended bill, both of which were verified by his oath, he stated that Beck sent this note to him by mail, without any solicitation or request on his part; that he kept the note and afterwards asked Beck what was the meaning of it, and that Beck told him it was to show that when the judgment was paid by the city, he, Luecht, would be entitled to receive the sum of $1000, together with the interest thereon. When testifying as a witness, Luecht stated that he got the note in 1897, (one year prior to its date,) and that Beck gave it to him in his (Beck's) office; that at that time he said to Beck, "Well, I ain't got a thing to show that I got a judgment against the city," and that Beck replied, "Well, I might as well give you a little note in writing, which shows you have

$1000 coming from the city, with interest." The following letter from Beck to Luecht was produced in evidence:

"*Mr. Charles Luecht:*         "Chicago, *Feb. 8, 1898.*

"Dear Sir—Your note found on my desk this Feb. 8/98. There was a transfer made of the judgment, and last year I gave you a note for $1000 for another year, pending payment of the judgment. As soon as the city pays your judgment you will get your $1000, with interest. I will look and see if it is on the appropriation for this year and let you know. Have been out of the city until Monday, or I would have looked it up before.

           "Yours truly,      C. W. Beck."

Luecht, as a witness, stated that he never held but one note against Beck; that he did not receive a note by mail, as he had stated in his bill, but that Beck gave it to him when he was in Beck's office. He admitted that four or five letters passed between Beck and himself, but none were produced except the one hereinbefore set out. Luecht also testified that when he got the note he paid no attention to it; that he held it in his possession; that about a year after he got it he found there was something wrong with the note; that it was dated in 1898 while Beck had given it to him in 1897, in his office; that he read it in 1898,—read it all through,—and did not pay much more attention to it; that he never asked Beck to pay it or offered to return it to him; that Beck had left the city, and when he last heard of him was in Cincinnati, Ohio. It appeared from other testimony that Beck left Chicago in the fall of 1898. Though Luecht testified as a witness that he did not know that he had assigned the judgment to Beck and that he supposed the paper he had signed simply authorized Beck to collect the money for him from the city, yet in his amended bill, verified by his oath, he admits that Beck told him he (Beck) had transferred the judgment. Beck's letter to Luecht refers to the fact that the judgment had been transferred, in unmistakable language, and the appellee testified that a friend of his told him that there had been an as-

signment of the judgment, and that his friend also told him "how it was that I could not get any money out of him," Beck.

So far as can be learned from Luecht's testimony,— and there was no other on the point,—Luecht, though informed by Beck that the judgment had been transferred and though its transfer is plainly mentioned to him in Beck's letter in 1898, and after being informed by his friend, in 1898, that the judgment had been assigned, and that he could not, or that his friend thought he could not, get any money out of Beck, yet he did not inquire of Beck about the transfer, or did not deny to Beck or to his friend, or any one else, that he had transferred it. He held Beck's note for $1000—the exact amount of his interest in the judgment. The testimony of Luecht that Beck gave him a note for $1000 in his (Beck's) office in 1897; the letter written by Beck to Luecht in 1898, in which he states that he had last year (1897) given Luecht his note for $1000 for another year; the statement in the bills, original and amended, that Beck sent to Luecht a note for $1000 by mail, and the production of a note given by Beck to Luecht in 1898 for $1000, cannot be reconciled upon the theory Luecht had but one note given by Beck. The facts clearly indicated by the testimony and the allegations of the bills are, that Beck gave Luecht his note in 1897 for one year, and at the expiration of that term gave in renewal thereof the note given in 1898. It was also clear from all the proof Beck never concealed from Luecht the fact that the judgment had been transferred. He told him so, and wrote so to him in the only letter of the many which passed between them that was produced in evidence. It was uncertain when the city would pay the judgment, and it seems to be conceded payment could not be enforced. Beck's note, due in one year, if paid, would secure to Luecht his interest in the judgment at the end of the year, together with interest thereon. He may have preferred to accept the note

rather than to await the collection of the judgment from the city. That there was some arrangement between Beck and Luecht by which Beck became the debtor of Luecht because of the assignment to Beck of Luecht's interest in the judgment, and that the notes were executed for the amount so due to Luecht, can hardly be doubted from the proof. The chancellor saw Luecht and heard him testify, and for that reason had superior opportunity to come to a correct conclusion as to the weight and value of his testimony. We have noted much that appears in the record which tends to detract from his truthfulness as a witness and from the value of his evidence to the court.

While a judgment is not assignable at the common law or under our statute, so as to vest the legal title in the assignee, yet courts of equity have long disregarded the common law rule prohibiting the assignment of choses in action, and have protected and enforced such assignments in equity, if made *bona fide* and for a valuable consideration. (*Chapman* v. *Shattuck*, 3 Gilm. 49; *Chicago Title and Trust Co.* v. *Smith*, 158 Ill. 417; 2 Am. & Eng. Ency. of Law,—2d ed.—1015.) In *Carr* v. *Waugh*, 28 Ill. 418, we said: "Equitable interests in choses in action, in modern times, have received a large protection by courts of law. In this respect the rigid rules of the ancient common law have been greatly relaxed." And we held that all contracts and agreements might be assigned in equity, and that the interests of the assignees would be protected, and would constitute a defense to a proceeding in garnishment. In *Hughes* v. *Trahern*, 64 Ill. 48, we said: "A judgment is not assignable, at common law or under our statute, so as to vest the legal title in the assignee. It is a mere chose in action, and only the beneficial interest passes to the purchaser. The assignee takes the judgment subject to all the equities that existed between the parties to the record. (*McJilton* v. *Love*, 13 Ill. 486.) In equity the assignee will always be protected from any

acts of the parties after notice.   The former owner and the debtor can do nothing, after notice, to defeat the rights of the assignee."

The doctrine of equitable assignments has so far been extended as that courts of law now take notice of and protect and enforce them.   (*Savage* v. *Gregg*, 150 Ill. 161.) After assignment and notice to the judgment debtor he cannot make payment to the judgment plaintiff, nor can the parties to the judgment, after notice, do anything to prejudice or defeat the assignee.   (*Hughes* v. *Trahern, supra; Chicago Title and Trust Co.* v. *Smith, supra.*)   It is true, the assignee of a judgment takes the same subject to all equities existing between the original parties prior to the assignment, or between his assignor and any prior assignor; yet when there has been an absolute assignment, in good faith and for a valuable consideration, all interest of the assignor passes to the assignee in equity, and he will be entitled to be protected accordingly. Where an assignor seeks, as in this case, to attack and overthrow an assignment made by him, the burden is cast upon him to establish a state of case entitling him, upon equitable considerations, to be relieved against his own act; and when, as here, a third person has parted with his money upon the faith of the act of such party, a court of equity should, before granting relief, have clear and convincing proof of all that is relied upon to avoid the assignment.

We are inclined to agree with the chancellor that the case made by the appellee was insufficient to warrant a court of equity in relieving him from his instrument of assignment, which relief, if given, must cast a loss upon one who accepted the assignment according to its terms and paid out his money upon the faith of its regularity and validity.

The judgment of the Appellate Court is reversed, and the decree of the circuit court must be and is affirmed.

*Judgment reversed.*