## Citizens Bank of Tifton, Appellant, v. Adam Schillo Lumber Company, Appellee.

### Gen. No. 19,741.

1. SALES, § 320*—*when buyer not entitled to recoup for freight paid.* In an action to recover the purchase price of a shipment of lumber, where by the terms of the contract the lumber was to be shipped to the buyer, *held* that defendant was not entitled to recoup for freight paid where there was nothing said in the order as to the payment thereof.

2. SALES, § 329*—*when evidence insufficient to allow recoupment of damages for breach of contract.* In an action for the purchase price of several shipments of lumber, *held* error to allow defendant to recoup damages for breach of the contract in not delivering the balance of the shipments contracted for, where no proof was made of the market value thereof at the time of the breach, or the amount of the lumber which defendant was entitled to have shipped.

3. SALES, § 376*—*measure of damages for failure to deliver.* The true measure of damages for failure to deliver lumber or any commodity in accordance with the terms of the contract is the difference between the contract price at the time of the breach and the market price, taking into consideration the quantities contracted for.

4. SALES, § 124*—*when reasonable time for delivery presumed.* Where a contract for a shipment of lumber does not specify the time when the shipment is to be made, or the time for delivery, there is a legal presumption that the lumber was to be delivered within a reasonable time, and parol evidence is inadmissible to controvert the presumption.

5. SALES, § 59*—*when contract of sale severable.* A written order for lumber specifying the number of cars, the character of the lumber to be loaded therein and the prices to be paid therefor,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*held* to constitute a severable contract so that a separate cause of action would arise on the invoice of each shipment delivered to the purchaser.

6. ASSIGNMENTS, § 29*—*when not affected by equities arising between original parties.* The liability on assigned invoices for lumber sold is not affected by any equities arising between the assignor and shipper after notice of the assignment.

Appeal from the Municipal Court of Chicago; the Hon. JOHN R. NEWCOMER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Reversed and remanded. Opinion filed October 6, 1914.

ADAMS, CREWS, BOBB & WESCOTT, for appellant; E. C. TOURJE, of counsel.

ARNOLD TRIPP, for appellee; JAMES W. BREEN, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

On May 9, 15, 20 and 26, 1911, the Atlantic Lumber Company of Tifton, Georgia, consigned and invoiced to the appellee, Adam Schillo Lumber Company, defendant, six carloads of lumber. The various invoices were, upon consignment, assigned to the Citizens Bank of Tifton, appellant, plaintiff below. Five of the assigned invoices were in the form of orders on the defendant to pay the account to the order of the plaintiff. The other assignment was by express assignment in writing to the plaintiff. On receipt of the invoices by the defendant, the same were acknowledged as shown by letters to plaintiff offered in evidence.

After demand for payment and refusal, this suit was instituted in the Municipal Court, predicated upon these invoices and the assignments thereof. As a defense to the action, the defendant alleged that the invoices sued upon covered lumber shipped by the plaintiff's assignor under a contract providing for delivery

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

to the defendant of sixty-four carloads of lumber, which contract, before the compliance with the terms thereof, was abandoned by the Atlantic Lumber Company; and that the failure on the part of the plaintiff's assignor to comply with its contract damaged the defendant to the extent of $728, for which sum the defendant claimed the right to recoup as against the plaintiff, which sum, together with the amount paid by the defendant for freight and a small allowance for "shorts" and "rejects," deducted from the amount claimed by the plaintiff, left a balance due to the plaintiff of $307.18, which the defendant signified its willingness to pay.

The order alleged by the defendant to have been given to the Atlantic Lumber Company for the delivery to it of the sixty-four cars of lumber was introduced at the hearing and was received in evidence.

On the trial the plaintiff agreed to allow the amount claimed by the defendant for "shorts" and "rejects" on the lumber covered by the invoices sued on. A jury was waived and the cause was tried before the court. On the trial the court was asked to hold that the memorandum of sale, being defendant's Exhibit 1, as treated by the parties, constitutes a severable contract. This holding was refused by the court. The order of the defendant was dated March 9, 1911, on the Atlantic Lumber Company, to ship to the defendant by the C., M. & St. P. Ry. Co., sixty-four cars of lumber, as follows:

| "2 | cars | 2 x 4 | #1—14′ Sissie | $18.00 | | | |
|---|---|---|---|---|---|---|---|
| 5 | " | 2 x 4 | "—16′ " | 18.50 | | | |
| 2 | " | 2 x 4 | "—18′ " | 19.00 | | | |
| 2 | " | 2 x 4 | "—20′ " | 19.00 | | | |
| 2 | " | 2 x 6 | "—12′ " | 17.00 | * | * | *" |

and so on, specifying the number of cars and the prices to be paid therefor. This order was accepted by the Atlantic Lumber Company. The order did not specify the time when the shipments were to be made or the time for delivery. In the absence of such time being

538    APPELLATE COURTS OF ILLINOIS.

Citizens Bank v. Adam Schillo Lumber Co., 188 Ill. App. 535.

fixed, the law will raise the presumption that the lumber was to be delivered within a reasonable time, and parol evidence to controvert this legal presumption is inadmissible. *Union Spec. Sew. Mach. Co. v. Lockwood,* 110 Ill. App. 387; *Driver v. Ford,* 90 Ill. 595. The written order contains all the elements of a contract and was a contract in writing. One of the vital questions in the case is whether or not the contract of sale is severable. In *Bank of Antigo v. Union Trust Co.,* 149 Ill. 343, the Court quotes from Parsons on Contracts with approval, as follows:

"If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable."

In *Keeler v. Clifford,* 165 Ill. 544, the Court said:

"The question, whether a contract is entire or severable, cannot be determined by any precise rule, but must depend upon the intention of the parties, which in each case is ascertained from the language employed, and the subject matter of the contract. 'If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable. And the same rule holds, where the price to be paid is clearly and distinctly apportioned to different parts of what is to be performed, although the latter is in its nature single and entire.'"

Under the above cited authorities, the trial court erred in refusing to hold that the contract in question was a severable contract. The trial court also refused to hold that the memorandum of sale, defendant's Exhibit 1, constitutes of itself a contract. This ruling of the court was erroneous.

It follows from what we have said in regard to the contract that each shipment thereunder gave rise to a

separate and distinct cause of action. Each shipment created of itself a contract or chose in action, and was the subject of an assignment. *Rothschild Bros. v. Wise,* 81 Ill. App. 95. In Mechem on the Law of Sales, vol. 2, sec. 1163, the author says:

"If, under this rule (rule laid down by Parsons) the contract is severable, the seller may recover, in any event for the part delivered, leaving the other to his remedy by recoupment or action for the damages sustained by non-delivery of the residue."

And in section 1164, the same author says:

"The rule stated by Mr. Parsons is simply a recognition of the fact that there may be contracts in which 'although the agreement is entire, the performance is severable,' or, as it has been otherwise expressed, that there may be a contract which may be 'one and entire in its origin, and yet, looking to the performance of different things at different times, it may be severable in its operation.'"

The six invoices sued upon in this case are each an independent cause of action. The invoices were received by the defendant and acknowledgment was made by the defendant of the receipt of the lumber to the plaintiff, stating that it would pay the amount direct to the Citizens Bank of Tifton. The several shipments shown by the invoices became wholly executed on delivery thereof to the carrier designated in the order, by the Atlantic Lumber Company, and upon the invoices being assigned, they constituted separate causes of action for the amount of each shipment. Each invoice and the acceptance by the defendant of the lumber became a separate and severable contract which gave rise to a separate cause of action. The liability of the defendant for the purchase price of the lumber became absolute upon the delivery thereof, as above stated, and the liability therefor was not affected by any equities arising between the assignor and the defendant subsequent to notice by the assignee of the

540     APPELLATE COURTS OF ILLINOIS.

Citizens Bank v. Adam Schillo Lumber Co., 188 Ill. App. 535.

several assignments. Under the Statute (chapter 110, sec. 18, Hurd's R. S. 1911, J. & A. ¶ 8555), the invoices were not subject to any equities arising after notice of the assignment. *Chicago Title & Trust Co. v. Smith* 158 Ill. 417; *Pearson v. Luecht,* 199 Ill. 475. The record does not disclose that any default existed upon the original contract on the part of the Atlantic Lumber Company at the time the assignments in question were made, nor at the time the notice of assignment was given to the defendant; on the contrary, the defendant, upon the receipt of notice of the assignment, promised that it would pay the plaintiff direct. It appears that the six consignments sued upon were shipped and received by the defendant; under the contract, a total of twelve cars had been received. As to whether the remaining six cars were received before or after the receipt of the cars sued on is not shown. If it be assumed that the remaining six cars were received later than the six cars in question, it constitutes a complete answer to any question that may be made as to default prior to the notices of assignments in question. If the remaining six cars, on the other hand, were received prior to the cars in question, that would not determine in any manner the question of default except in plaintiff's favor, as an acceptance of these six cars would be itself a waiver of the default. But it is sufficient to say that the record is entirely barren of any evidence of default at the time notices of assignments were given to defendant.

The theory on which the defendant bases its right to recoup against the plaintiff is the failure of the plaintiff's assignor to ship more than twelve cars of lumber. There is no question made in the record but that the Atlantic Lumber Company failed to comply with its contract to ship thereunder the balance of fifty-two cars of lumber to the defendant. Failure, however, on the part of the Atlantic Lumber Company to ship the balance of the cars of lumber could not

give rise to a right of recoupment on the part of defendant against the six invoices in question; for it does not appear in the record that this failure occurred before the consignments in question and notices of the assignments thereof to the plaintiff were given, and even if it did occur before such notices were given, the acceptance of the lumber by the defendant and the promises by the defendant to the plaintiff to pay for the lumber waived any right to recoup for the failure of the Atlantic Lumber Company in the shipment of fifty-two cars of lumber, for the reason given above. But, a further answer to the contention of the right to recoup in this case is based upon the evidence offered on behalf of the defendant. There is no evidence in the record establishing defendant's claim that it was damaged to the extent of the sum of $728. No proof was made of the market value of the lumber. Proof was made that the defendant paid $1 more per thousand than the contract called for. That was incompetent evidence and did not tend to prove damages. The true measure of damages for failure to deliver lumber, or any other commodity, in accordance with the terms of a contract, is the difference between the contract price at the time of the breach and the market price, taking into consideration the quantities contracted for. No proof was made in this case of the market value at the time of the alleged breach, or of the amount of lumber which the defendant was entitled to have shipped. It was error to allow, as against the claims sued on, the $728, for there was no foundation for such allowance in the evidence. It was also error to allow payments of freight to be recouped or deducted. By the terms of the contract, the lumber was to be shipped at Sparks, Georgia, to the defendant at Chicago. When the Atlantic Lumber Company delivered the lumber to the C., M. & St. P. Ry. Co., it was delivered to the defendant. Nothing is said in the order as to the payment of freight. *A. J. Neimeyer Lumber Co. v. Burlington & M. River R. Co.*, 54 Neb.

321; *City of Carthage v. Duvall*, 202 Ill. 234; *Lake Shore & M. S. Ry Co. v. National Live Stock Bank*, 178 Ill. 506. It follows from what we have said that the court erred in admitting parol evidence of the contract. The conversations between the parties, before the order was reduced to writing, were merged in the order, and it became a complete contract in writing.

Other errors based upon the refusal to hold propositions of law presented by the plaintiff were committed by the trial court, but we think it unnecessary, in view of what we have said, to discuss them in detail.

The judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*