Judge Marshall
delivered the Opinion of the Court.
One object of this bill — which was filed by Arthur .Tap-pan & Co. — was to attach in the hands of Eades and Carrico, merchants of Louisville, a debt due from them to Lewis L. Wolf, and to appropriate it to the payment of a debt due from Wolf, who was out of the Commonwealth, to the complainants. The usual restraining order was served upon Eades and Carrico; and after the suit had been proceeding for some time, in the ordinary way, the complainants filed a supplemental bill, in which they suggest that Eades and Carrico are about to become bankrupt, or are already so; that they have sent a large quantity of goods to Ely and Carll, merchants and auctioneers, to be sold at auction, and they say they are not informed that Eades and Carrico have any other property out of which their debt can be made, and they apprehend that, if the proceeds of the sale of the goods be paid over to Eades and Carrico, they will so contrive to dispose of them, that they (the complainants) will lose all benefit of the decree. They pray, therefore, that Ely and Carll, who are made parties, may be enjoined to retain in their hands a sum equal to the debt claimed in the bill, if they have so much of the proceeds of the sale, and that they be finally decreed to pay the same to the complainants.
A restraining order was granted accordingly; and upon the answer of Ely and Carll, giving a statement of the sales, and showing the balance remaining in their hands, which they say they will hold subject to the or *362 der of the Court, they were, on final hearing, decreed to pay it over to the complainants.
The propriety of this proceeding and decree presents the only question which we deem it necessary to notice in the case.
As Eades and Carrico were, as the case now stands, properly decreed to pay to the complainants, a certain sum of money which they owe to the complainants’ debtor, it might not perhaps have been improper, if the Court found itself rightfully in the possession and control of a specific portion of the funds of Eades and Carrico, acquired, either for general purposes, or for this specific purpose, for it to decree the immediate application of those funds to the satisfaction of the complainants’ demand. But the question is whether, in this instance, the control over the fund was properly assumed: and this question cannot be merged in any consideration of the justice and propriety of the disposition which was ultimately made of it.
It is entirely obvious that, in attaching the money of •the original garnishees in the hands of their debtors or agents, the Court has carried the remedy by attachment -one degree farther than is authorized by the statute which directs the mode of proceeding against absent debtors who may have effects or debts within this State. .And it is equally obvious that the case is not within the provisions of those statutes which authorize the Chancellor, under certain circumstances, to lay hold of the choses in action of a resident debtor. There was no return of nulla bona against Eades and Carrico, nor even a decree against them, when the attachment against their debtors was granted and served. The statutes last referred to, are, therefore, wholly inapplicable to the case. If the attachment of a debt, as is authorized by the statutes, gave any lien upon the property of the debtor, the Chancellor might, for the sake of the lien, follow that property into the hands of a third person, receiving it after the lien attached, and hold him responsible for the property or its value. But there is no ground for supposing that the attachment of the debt gives any such lien. It is in effect, as it is in form, nothing but a *363 personal injunction upon the debtor, not to pay the debt until the further order or permission of the Court; and it only authorizes a decree against him personally for the debt. It does not, either in form or effect, restrain, him from using or disposing of his own property,, or any portion of it, nor in any respect abridge his rights over it. The Court has, by virtue of the statute, jurisdiction to ascertain the debt, and to decree its payment to the proper person. But this is all the jurisdiction which it has by virtue of any statute, over, or with respect to, the garnishee, or his property, until after decree.
Unless, therefore, the proposition can be maintained, that whenever the Court of Chancery has jurisdiction to ascertain and decree a debt, it has also, and as a consequence or incident of that jurisdiction, the power, in the first instance, to lay hold of the debtor’s property, or choses in action, or a portion of them, for the purpose of insuring the performance of the decree, it cannot be admitted that any such power is incident to the jurisdiction vested by statute in the case either of non-resident or insolvent debtors. The general proposition, as above stated, is not in form asserted nor attempted to be sustained by the argument in support, of this decree. It cannot be sustained either upon the ground of principle or of any authoritative adjudication. The power of restraining an individual from, the exercise of his ordinary rights over his own property, to which no other asserts any specific claim, is too pregnant with mischief and- oppression, and is too directly hostile to the general interests of a commercial community, as well as to the still more important rights of individuals, to justify its assumption in any particular case, upon the mere ground that it may, in that case, subserve the end, or even prevent the probable failure, of justice.
Where, by contract, or by statute, or upon the general principles of equity, a party has, or claims to have, a. lien on property in the possession of another, the Court may interpose, in various ways, for the ascertainment, preservation, or enforcement, of the lien, and will forbid the removal or destruction of the property, until the object of its interposition is attained. And the same *364 thing may in effect be done in favor of any specific right to the thing, when that right is in contest, either in a court of law or equity. But the mere existence of a general pecuniary demand creates no lien, general or specific, either in law or equity, and therefore furnishes no ground, before decree, for the Court of Equity to act in rem, or in any other manner than upon the person of the debtor. After decree, the Court may, by execution or otherwise, act upon the property of the debtor. And it is contended that the proceeding in this case, is maintainable on the ground, that the Court might interpose to prevent the effects of the fraudulent conduct of Eades and Carrico, in selling oil their goods, whereby the expected decree might be rendered ineffectual. But the supplemental bill on which the proceeding in question was based, makes no charge of fraud; and without admitting that the Court could have interposed, as it did, on the ground of preventing an intended fraud, the fact that there was no allegation of such a fraud, is a sufficient answer to this argument, and there is no special ground for the proceeding under consideration.
We are of opinion, therefore, that the Court had no right to enjoin the auctioneers from paying over to Eades and Carrico, or their order, the proceeds of the sales of their goods; that these funds, therefore, did not come rightfully within the jurisdiction or control of the Court, and that the decree is erroneous in appropriating them to the payment of the complainants’ demand. Wherefore, the decree is reversed, and the cause remanded, with instructions to dismiss the bill as to Ely and Carll.