ELISHA B. HITT et al., Plaintiffs in Error, *v.* JOSEPH W. ORMSBEE et al., Defendants in Error.

### ERROR TO SCOTT.

Upon a bill filed to receive the benefit of certain choses in action, in satisfaction of creditors, the court will enter a decree, where the answers to the bill show the existence of such choses, and there is no evidence to satisfy the court that the choses in action have been assigned in good faith, for a valuable consideration.

THE decree complained of was entered by WOODSON, Judge, at September term, 1852, of the Scott Circuit Court.

M. McCONNEL, for plaintiffs in error.

D. A. SMITH, for defendants in error.

CATON, J. The complainants aver that they have separate judgments against Ormsbee, on which executions have been issued and returned unsatisfied, except as to ten dollars which were made on one of the executions. The bill further avers, that the defendants White and Whitelaw have in their hands certain articles of personal property and choses in action belonging to Ormsbee, which they are concealing from his creditors, and that they are indebted to him for a house and lot in Exeter, or that they hold the legal title to said property in trust for said Ormsbee, and prays that said property be subjected to the payment of said complainants' judgments, or that whatever White and Whitelaw shall be indebted to Ormsbee, shall be applied to the satisfaction of said judgments.

Ormsbee, White, and Whitelaw answer jointly; their oaths having been waived by the bill. They first in general terms deny all indebtedness from White and Whitelaw to Ormsbee, or that they have any property in their hands belonging to Ormsbee. They then exhibit a contract executed between

20 *

White and Whitelaw of the one part, and Ormsbee of the other part, which by its terms is made assignable, and by which the former are shown to be indebted to the latter, in the sum of six hundred dollars, and in the same contract they also acknowledge that they have certain articles of personal property and certain choses in action in their hands, belonging to Ormsbee. This contract, however, they aver, has been assigned by Ormsbee to one Harrington, who is now the *bonâ fide* holder of the same, to whom alone White and Whitelaw owe the sum of money specified therein. Subsequently, Harrington applied for leave to be made a defendant in the suit, and by agreement of parties he was allowed to file an answer, and was treated as a party to the suit. In his answer, Harrington avers that previous to the commencement of this suit, Ormsbee, for value received, assigned to Harrington his duplicate of said agreement, of which he immediately notified White and Whitelaw, who are bound to discharge to him all liabilities created by said agreement.

Replications were filed to all the answers. On the part of White and Whitelaw the deposition of the defendant Ormsbee was taken. He swears that before the month of February, 1850, he assigned to Harrington the agreement referred to, but whether upon any or what consideration he does not state.

Two witnesses swear that they are acquainted with the character of Ormsbee for truth and veracity in the neighborhood in which he resides, and that his character is bad. Another witness, who resides at Naples, had some knowledge of Ormsbee's character in St. Louis, where he resides, and that so far as he had heard it spoken of, it was bad; but he was not acquainted with his general character there. Another witness, who has known Ormsbee many years, and resided in St. Louis in 1845, says that so far as he knew, his character was good. Whether he was acquainted with his general character he does not inform us.

Upon these pleadings, and this proof, the suit was heard in the circuit court, and was dismissed. In this decision, we think the court erred. The whole defence, as we understand the case, turns upon the proof of the assignment from Ormsbee to Harrington, of the agreement spoken of. The answers of White and Whitelaw admit the existence of that agreement, and the liability created by it; but they also aver that it had been assigned in good faith, and for a valuable consideration to Harrington.

Admitting that the same weight is to be given to the exculpatory parts of an answer not sworn to, that in a sworn answer

they are entitled to, and still the answer of White and White-law would not be evidence of a *bonâ fide* assignment to Harrington of the debt which they owed to Ormsbee. It was a matter of which they pretended to know nothing personally, and of which, in all probability, they could know nothing, from the very nature of the transaction. They may have been informed that such an assignment had been made; but how could they know whether it was in truth an honest transaction, or merely colorable for the purpose of protecting the debt from the reach of creditors? They state no circumstances within their own knowledge tending to elucidate that point. It has been often decided, that in weighing an answer as evidence, the court will look beyond the most positive statements to the character of the transaction stated, and if it can see that those positive statements are not made upon personal knowledge, but upon the information of others, they amount at most but to the expression of an opinion, and do not rise to the dignity of evidence on which the court can act in favor of the party making the statement,— such clearly is the character of the statements in this answer, so far as the assignment is concerned. So far as we can see from the record, it is a matter of perfect indifference to White and Whitelaw, which way this suit is decided. They admit that they owe the money to somebody, and what is the difference to them, whether they pay it to Ormsbee's creditors, or to Harrington?. They are merely stakeholders, and are only interested in seeing that they do not have it to pay twice. In the forepart of their answer, there is a general denial of any indebtedness to Ormsbee, but this is explained by the subsequent admission of the indebtedness created by the contract. The answer does not contain proof of the transfer of that contract to Harrington.

Still less, if possible, is the answer of Harrington evidence of the assignment, but for quite a different reason. There is no doubt but that he knew whether such an assignment had been made, and whether it was *bonâ fide*, and upon what consideration; but the objection to his answer as evidence, in addition to its not being required to be sworn to, is, that it is not responsive to the bill, but sets up new matter, an independent right in himself, and of which, by the terms of the bill, he was not called upon to speak. He was admitted to appear and defend, upon his petition setting up this new right in himself, and for the purpose of protecting his own interest, and not for the purpose of defending the interests of others. Rights thus presented to the court, must always be supported by proof. Harrington's petition and answer (for they are both but one thing),

can only be regarded as pleading, and laying the foundation for proof in support of the right thus presented. But above all, is this petition and answer not proof in favor of the defendants White and Whitelaw, against whom alone the complainants are seeking relief?

We must look to the testimony alone to determine whether there has been a *bonâ fide* transfer of this chose in action to Harrington, and upon a sufficient consideration. In answer to the question, Whether he did or not " for value received and *bonâ fide*, assign and deliver his duplicate of said agreement, to one George Harrington?" Ormsbee said, " I did make said assignment to said Harrington." He further says, that before February, 1850, he gave a verbal, and he thinks a written, notice of said transfer to White and Whitelaw. This constitutes the sum of the evidence of this transfer to be found in this record. Even if this witness were unimpeached, we should hesitate long before we should act upon evidence of a transfer so unsatisfactory as this. Neither in the deposition of Ormsbee nor in the petition and answer of Harrington, nor in any other part of the record, is there any statement or even intimation of what the consideration of this assignment was. That seems to have been studiously concealed, so that no clue to the real consideration, if any, is afforded. Nor does the witness even say, that it was upon any consideration whatever.

But we are prepared to place our decision upon other grounds. Above and beyond all this, we are of opinion that the witness was successfully impeached. The only witnesses who profess to be acquainted with his character for truth and veracity, say that it is bad, both when under oath and not under oath. The only witness who attempts to support him, does not claim to be acquainted with his general character, but only says that " so far as he does know his general character for truth and veracity among his neighbors, it is good, and that in a matter where Ormsbee stood indifferent as a witness, he would believe him." But he says he had been prosecuted for perjury in St. Louis, and that " he is a man of loose morals." It is the duty of a court of equity to look to clearer lights than these, to ascertain the truth, upon which to determine the rights of parties. We feel it to be our duty to lay out of view altogether the testimony of Ormsbee.

The existence of the liability from White and Whitelaw to Ormsbee, which was created by the contract referred to is admitted, and there being no evidence that this chose in action has ever been equitably transferred to any person, the complainants are entitled to have the same applied to the satisfaction of their judgments *pro rata*.

The decree of the circuit court must be reversed and the suit remanded, with instructions to enter a decree conformable to the views of this court.

*Decree reversed.*

14 237
30a 195
30a 530

14 237
35a 635

14 237
45a 406

14 237
58a 637

14 237
59a 501
60a 568
62a 389

14 237
64a 129

14 237
68a 462

14 237
75a 119

14 237
d97a ³566