## Robert D. Lay, Appellee, v. Gustave Myers and Pauline A. Myers, on Appeal of Pauline A. Myers, Appellant.

### Gen. No. 17,437.

1. CREDITOR'S SUIT—*when rights in mere choses in action are subject to.* A mere contingent right in real property, chattels or choses in action, depending upon an uncertain condition precedent, is not subject to a creditor's bill; but a vested right or estate that is salable may be subjected to the creditor's debts when assigned in fraud of creditors, although it be a right in a mere chose in action depending upon a condition subsequent that may end or forfeit the right.

2. CREDITOR'S SUIT—*interest of insurance agent in renewal commissions is a debt of company to him.* The interest of an insurance agent in an uncollected renewal premium, which the insurance company has undertaken to pay him on collection, is a debt of the company to him, and not merely a debt due the company.

3. CREDITOR'S SUIT—*creditor's bill will lie to reach renewal commissions fraudulently conveyed.* A creditor's bill will lie to reach renewal commissions, payable by an insurance company to its agent as premiums whereon they are based are collected by the company, where the agent conveys the same in fraud of his creditors.

4. CREDITOR'S SUIT—*evidence held sufficient to show fraud and absence of consideration.* On a suit to set aside a sale and assignments of

renewal commissions by an insurance agent to his wife and for the appointment of a receiver, evidence held to warrant conclusion of court that the sale was not for a valid consideration and was made with intent to defeat the complainant in his attempt to collect his judgment.

5. FRAUDULENT CONVEYANCES—*gifts of money by husband to wife.* A gift made by a man to his wife before a cause of action accrues against him, if made for the purpose of defeating subsequent creditors, will be considered fraudulent as to such creditors.

6. SUPPLEMENTARY PROCEEDINGS—*not bar to creditor's suit.* Supplementary proceedings by citation, pending in municipal court, will not abate or bar a creditor's suit to set aside a conveyance by the judgment debtor to a third person on the ground of fraud.

Appeal from the Circuit Court of Cook county; on the HON. ADELOR J. PETIT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed June 30, 1913.

LEON HORNSTEIN, for appellants.

L. A. STEBBINS, for appellee; E. D. BROTHERS, of counsel.

MR. PRESIDING JUSTICE DUNCAN delivered the opinion of the court.

A decree was entered in this case on a creditor's bill in favor of Robert D. Lay, appellee, and against Gustave Myers and Pauline A. Myers, appellants, and the five insurance companies hereinafter named, that the sale and assignment of the renewal commissions by Gustave Myers to Pauline A. Myers, his wife, dated January 15, 1908, be set aside and declared null and void as fraudulent; that O. H. Rookhold be and is appointed receiver for said renewal commissions due and to become due on the contracts of said insurance companies with said Gustave Myers; and that the receiver with said proceeds pay the costs of this suit, the judgment at law of appellee against appellant, Gustave Myers, in the sum of $1,043.35, including costs, and that he bring the remainder into Court, if any, to abide the further order thereof.

The undisputed facts are these: Appellee began a

suit for libel, published in October, 1907, against appellant, Gustave Myers, in the Municipal Court, January 8, 1908, and recovered said judgment at law March 31, 1908. An execution was issued on said judgment and returned wholly unsatisfied, whereupon said creditor's bill was filed to set aside said sale of Gustave Myers to his wife as fraudulent and void as to his creditors. Appellant, Gustave Myers, is a life insurance agent and the renewal commissions due or to become due to him and which by his said contract he sold and assigned to his wife, Pauline A. Myers, were provided for under contracts with him by said insurance companies, to wit: with Pacific Mutual Life Insurance Company of California, dated February 11, 1907; with Mutual Life Insurance Company of New York, dated February 23, 1907; with A. S. Rennie for Illinois Life Insurance Company, dated January 19, 1907; with J. L. Ferguson for the Prudential Insurance Company, dated February 25, 1907; and with F. L. Morrell for the Manhattan Life Insurance Company of New York, dated January 24, 1905. The contracts of Gustave Myers with the insurance companies were all similar as to the renewal commissions. His contracts with them provided that he should receive in cash commissions on the first year premiums collected by him on policies secured by his own efforts about twenty per cent. to seventy per cent. thereof, the size of the commission depending on the character of insurance, and these sums again varying with different companies. In addition to said commissions Myers was to receive from every one of said insurance companies commissions on certain renewals or subsequent cash premiums paid by the assured to the companies amounting from two and one-half to five per cent. of every such renewal, the commission depending upon the character of the insurance and it also varying with different companies. These renewals were limited by some of the companies to the first nine renewals, while

in others it was limited to the first eight renewals and all of said commissions were to be collected by the companies and paid to Myers or to his representatives in case of his death. The interest sold in said renewal commissions by Myers to his wife was all his interest therein from and after June 1, 1908.

The first proposition that is urged as a ground for a reversal of the decree is that a creditor's bill will not lie to recover commissions depending on a contingency, as did Myers' commissions on the renewals in question. In the absence of statutory authority the courts of this country are in conflict as to whether choses in action of a debtor can be subjected in equity to the payment of his debts. Our Supreme Court has decided that question in favor of the creditors. *Hitt v. Ormsbee*, 14 Ill. 233.

It has also been held that a contingent remainder cannot be sold for the benefit of the creditors of a possible remainder-man, for the obvious reason that no one could know at the sale of such an interest whether or not any vested interest could ever come to the purchaser thereof. It is evident that it would be to the interest of both debtor and creditor to await the happening of the contingency that would vest an estate in the remainder-man, and that any other course would be ruinous to both. It is evident, too, that no lien could attach to property not yet in being, and which might never be. *Howbert v. Cawthorn*, 100 Va. 649.

It has also been decided that a debt due a debtor of the debtor cannot be reached at law or in equity by garnishment or attachment. *Jones v. Huntington*, 9 Mo. 249; *Wolf v. Tappan & Co.*, 35 Ky. (5 Dana) 361; *Drake on Attachment*, sec. 454; *Illinois Cent. R. Co. v. Weaver*, 54 Ill. 319.

Mere possibilities of a right are not subject to creditor's bills. *Browning v. Bettis & Garrow*, 8 Paige

(N. Y.) 568; *Smith v. Kearney,* 2 Barb. Ch. (N. Y.) 533.

The weight of authority in this country is to the effect that the interest of a debtor in a life insurance policy may be reached by a creditor's bill, whether such interest arises by the terms of the policy or by reason of premiums paid in fraud of creditors. *Fearn v. Ward,* 80 Ala. 555; 12 Cyc. 29, and also pages 28 to 31 inclusive upon all the foregoing propositions.

Under an ordinary life policy an interest vests in the person for whose benefit it is taken out, when it is delivered, subject to be divested or forfeited on non-payment of the premium, as the policy may prescribe. *Drake v. Stone,* 58 Ala. 133.

From the foregoing citations we conclude that the law of this state is to the effect that no mere possibility of a right is subject to a creditor's bill, whether that right be in reference to chattels, real property or choses in action, that is to say, a mere contingent right depending upon an uncertain condition precedent. If the property right, however, is a vested right or estate that has value and is salable, a creditor's bill will lie to have it subjected to the creditor's debts when assigned in fraud of creditors, although it may be a right in a mere chose in action depending upon a condition subsequent that may end or forfeit the right, and upon which nothing is due on the filing of the bill. The interest of Gustave Myers in the renewals in question was an assignable chose in action. It was proved by appellants that Myers had sold $300,000 or more of insurance for said companies in which he was to receive commissions on renewals and upon which he had collected first premiums and commissions on first renewals, and that his anticipated commissions in the future renewals amounted to about $400 annually; that these commissions were worth in cash money on the day of the trial $900 or more, and that his wife contracted to pay him therefor $1,000; that policies

of insurance sold by him were usually kept in force by the assured paying their annual premiums, and that he had made cash sales of other similar interests in renewals. Myers' interests in those renewals on policies already sold and first premiums and renewals paid thereon were as certainly vested interests as were the interests of the beneficiaries named in the policies in the insurance money that were to be paid on the death of the assured. His interests were subject to conditions subsequent in like manner as were the interests of the beneficiaries in the policies. His interests were to expire or be forfeited on conditions that the assured died or failed or refused to pay the renewal premiums, while the interests of the beneficiaries would expire or be forfeited upon failure to pay the premiums and to abide and perform the requirements of the policies, and both were to be paid by the insurance companies. The interests of Myers in the renewal premiums were debts of the insurance companies to him, and not merely debts due the insurance companies. The complainant therefore was not seeking by his bill to attach the debts of the debtors of his debtors. Anything into which money or property or labor has been turned, or in which it has been invested which can be traced or treated in equity as if it were money itself or property, possessing value, and is salable on the market, can be subjected by a creditor's bill to the payment of the creditor's judgment, when not exempt by statute. *Ogden v. Wood,* 51 How. Pr. (N. Y.) 375; *Anthracite Ins. Co. v. Sears,* 109 Mass. 383.

This bill and the decree in this case secured to the complainant a definite lien or right to Myers' commissions to be paid by the insurance companies without creating any lien on the property or rights of the insurance companies, or any one claiming under the policies, and without disturbing any rights of any party to the insurance policies or claiming thereunder, and no one complains in this court except appellants.

If it may be said that *Boisseau v. Bass,* 100 Va. 207, and the authorities therein cited, are in conflict with our conclusions, we do not think that they are in harmony with the weight of the authority in this country. Vested interests that have a market value, and from which the holder may and does have full confidence in enjoying yearly incomes, although subject to be defeated on conditions subsequent, ought to be subjected to the payment of his debts by a court of equity, if conveyed in fraud of his creditors.

It is also insisted by appellants that the sale of the renewal commissions by Myers to his wife was a bona fide sale for a valuable and adequate consideration and that the purchase money therefor was from the separate property of Mrs. Myers. We think that the evidence in this record sustains the finding of the court that the transaction was fraudulent and void as to the creditors of Mr. Myers. It was unquestionably shown that Mr. Myers had no other property in his own name at the time of said conveyance except seven suits of clothes, four or five overcoats, five hats, ten suits of underwear, six waist coats, two dozen collars, a dozen neckties, seven pairs of shoes, shirts in numbers unknown to him, a gold watch, platinum and gold chain, silver pencil, a number of cuff buttons, diamond ring, scarf pin, five gold shirt buttons, gold cigar cutter, two sets eye-glasses, trunk, two umbrellas, cane, and some photographs and frames. He was adjudged a bankrupt in December, 1905, and discharged in March, 1906. He testified that he had an income of $10,000 in 1907, and does not remember how much he made in 1906, but that he does remember that he gave his wife $2,000 in December, 1906, as a mere gift without any particular occasion therefor, and that he had large sums of money in his possession at that time and something less than $4,000 in currency on his person. Yet he further testified, in December, 1908, that he could not tell what he did with the balance of his money

made in 1906 and 1907, using, in substance, this language: "I don't think I made any investments since I was declared a bankrupt other than with brokers on the board of trade. I spent it in different ways. May have speculated with some of it. I have none left. Some of my speculations were successful, others not. I speculated with Mrs. Myers' money for Mrs. Myers. I do not believe the speculations with Mrs. Myers' money were successful. I cannot tell whether those with my own were successful. I know as a whole I probably lost out, but I have no data as to each individual transaction. During 1907 I might have profited through my speculative transactions. Don't know whether I used any of my income to pay indebtedness. I used the money, but I couldn't tell you what for. Don't know what my living expenses were in 1907. My living expenses includes the money which I used in trying to procure life insurance, entertaining prospects and things like that. The large item was that I put money in my pocket in the morning and did not have it at night; where it went I don't know. My rent was only $480 a year; my grocery bill and butchers' bills and candle stick man is no more than would be of a man who had an income of $1,200 or $1,500 a year. For many years I was making $15,000 and as high as $60,000 a year, and I haven't a dollar of it to show now. My wife has been paying the living expenses for many months past,—all of 1908, excepting an item of $150 which I gave her. I made no substantial gifts to my wife since October, 1907. I sent her money for living expenses." He also testified that his wife usually kept a bank account, but that he did not; that he generally carried his money in his pocket or in a safety deposit box in the First National Bank, in which he put money from time to time, but that there is none there now; that when he put money in that safety box, it was in large amounts, probably more than $500, but that he did not remember any time or amount or occa-

sion when he did so. He was also wholly unable to account, and did not account, for the $1,000 paid him by his wife for his interest in the renewal premiums when examined concerning same in December, 1908.

His wife also testified that Mr. Myers frequently gave her presents of money and other property and that she loaned him money frequently, and that he gave her money long before she was married, but that she is not clear whether or not she paid for the renewals with that money; that she has never been engaged in any earning capacity and that Mr. Myers usually advised and transacted her business in the investments made with her money, and that he looked after former suits and paid the expenses thereof, that were instituted by other parties, his creditors, to have her property and investments declared as his property and investments and conveyed in fraud of their rights; that she had money before she was married, but she specified no amount whatever, and that she gave him money and that she most always treated the gifts as loans and when he paid it back he was very liberal with her and in many instances paid her more than she loaned him. We do not consider it necessary to go into the details of the various transactions between Mrs. Myers and her husband, or to characterize them. It is sufficient to say that the evidence warranted the conclusion of the court that the money or property held by Mrs. Myers was given her by her husband and that she simply held it in trust for him to be dealt with and used at his pleasure, and that it was placed in her name to prevent his creditors from reaching the same, and that the sale of the renewals to her was made with the intent to defeat the complainant in particular in his attempt to collect his judgment.

We have carefully considered the other contentions of appellants, and conclude that they· are untenable. Conceding that the gifts by Myers to his wife were made before this cause of action accrued to appellee,

if the gifts were so made to defeat subsequent creditors, the gifts would be fraudulent as to such creditors. The conveyance of the renewals with intent on the part of Myers and his wife to defraud appellee, as the court was warranted in concluding, is sufficient to sustain the decree of the court.

There is no evidence to warrant the conclusion that appellee was estopped from attacking Mrs. Myers' title by reason of his recognizing her title, or by reason of any former suits brought by other creditors. He was not a party to the other suits, and the transaction sought to be set aside in this case is a new transaction which was never in question in the former suits.

The supplementary proceedings by citation, pending in the Municipal Court, were no abatement or bar to this suit. The remedy by citation in that court is a summary proceeding and not intended to try contested rights and titles to property, and a court of equity would not be warranted in declining to take jurisdiction in a case like this, where a conveyance by the debtor to a third person is asked to be set aside on the ground of fraud, and the property subjected to the payment of the debtor's debts. *Moore v. Brandenburg,* 248 Ill. 232.

The decree of the court is affirmed.

*Decree affirmed.*