THE NORTH AVENUE BUILDING AND LOAN ASSOCIATION
*et al.* Defendants in Error, *vs.* CHRISTINA HUBER,
Plaintiff in Error.

*Opinion filed October 27, 1915—Rehearing denied Dec. 9, 1915.*

1. LOAN ASSOCIATIONS—*when purchase of note by loan associa-tion is ultra vires.* If the power of a loan association to loan money is limited by statute to making loans to members, only, it has no power to make loans to non-members nor to purchase a note and trust deed made by a non-member to evidence and secure a loan obtained by the non-member from a third party.

2. SAME—*when loan association has no right to foreclose trust deed.* If the act of a loan association in purchasing a note and trust deed made by a non-member is *ultra vires,* the association has no right to come into a court of equity and have the trust deed foreclosed upon the theory that it is the equitable owner of the securities while the legal title is in the trustee.

WRIT OF ERROR to the Branch "C" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

FREDERICK MAINS, for plaintiff in error.

CHRISTIAN MEIER, for defendants in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This case comes to this court upon a writ of *certiorari* to the Appellate Court for the First District to review the judgment of that court modifying, and affirming as modi-fied, a decree of the circuit court of Cook county in a fore-closure suit begun and prosecuted by defendants in error against plaintiff in error and others.

The plaintiff in error, Christina Huber, and John Hu-ber, are husband and wife. Prior to October 24, 1895, they became and were indebted to E. S. Dreyer & Co. in the

sum of $14,000 and to Kemper Bros. in the sum of $4000.
On said date, October 24, 1895, they executed a note, pay-
able to the order of themselves, for $18,000, due in five
years, with interest at six per cent per annum, payable
semi-annually, and evidenced by coupon notes. The note
was secured by a trust deed on real estate given to William
Kemper as trustee. The Hubers indorsed the note and de-
livered it, with the trust deed, to Kemper, a member of the
firm of Kemper Bros. The indebtedness of the Hubers to
E. S. Dreyer & Co. was paid by a check drawn on the bank
account of Kemper Bros., and the indebtedness to Kemper
Bros. was satisfied by giving the Hubers credit on its in-
debtedness to that firm of $4000. William Kemper was
the treasurer of the defendant in error building association
and banked the money coming into his hands as such treas-
urer to the account of Kemper Bros. Said firm of Kem-
per Bros. also deposited the firm's money in the same bank
and to the same account. At the time William Kemper
drew the check for the payment of the indebtedness of the
Hubers to E. S. Dreyer & Co., Kemper Bros. had a balance
in bank to their credit of $17,047.25. Of that amount
$8185.88 was funds of the defendant in error association.
On November 12, 1895, the directors of the association at
a regular meeting adopted a resolution that the association
buy a $10,000 interest in the $18,000 note and trust deed
of the Hubers and caused an order to be drawn for the
payment of the money to William Kemper. Upon receipt
of it he delivered, without indorsement, the note and trust
deed to the association. A memorandum attached to the
voucher to William Kemper stated the association was to
hold the papers and receive the interest on $10,000 and
Kemper was to receive it on $8000. On November 18,
1895, the association bought an additional $4000 interest
in the Huber note and trust deed, and on September 8,
1896, the association bought the remaining $4000 interest
in the Huber note and trust deed. The Hubers paid the

interest on the note up to April 24, 1910, since which time they have paid nothing.

In the original bill to foreclose the trust deed the North Avenue Building and Loan Association and William Kemper were the complainants. The bill alleged the note was given for a loan made to the Hubers by the building association and that the trust deed was executed to secure the same. The bill was demurred to, and among the special grounds of demurrer assigned were that the bill did not allege the Hubers, or either of them, were stockholders or members of the association at the time the loan was made, and that the making of the loan was *ultra vires* and *malum prohibitum.* Without the court having ruled upon the demurrer, complainants asked and were granted leave to file an amended bill. There was a demurrer and plea to the amended bill, which were overruled, and plaintiff in error, Christina Huber, answered the bill. Subsequently an engrossed amended bill was filed by leave of court, in which the association and William Kemper, as trustee, were complainants. This bill alleges that the statement made in the original bill that the loan was made by the association to the Hubers was erroneous; that it arose from a misunderstanding of the facts by the solicitors for the complainants and was made without the knowledge of the complainants. The bill then alleges the loan of $18,000 was made to the Hubers by William Kemper; that the association had funds on hand for which there was no demand from its members, and that it purchased the note and trust deed for the benefit of the members of the association and was then the legal holder and owner of the note. The bill alleges Christina Huber asserts that the purchase of the note and trust deed was an *ultra vires* act and that the association acquired no title to the securities thereby; that if such transaction should be held to be *ultra vires,* in that event the legal title to the note would be in William Kemper for the use of the association as the equitable owner of the

note and trust deed, and the trust deed should be foreclosed and the money realized therefrom held by Kemper as trustee for such person as may be equitably entitled thereto.

Christina Huber answered, denying the statement made in the original bill that the loan was made by the association to the Hubers was a mistake, and alleging that the complainant association was informed of and knew the contents of the bill at the time it was filed and persisted in said statement until the filing of the engrossed amended bill, which occurred long after the filing of the original bill and after evidence was heard. The answer sets up as matter of estoppel the admissions in the original bill, and also sets up that the investment of the association's money in the purchase of the note and trust deed was *ultra vires* and prohibited by statute.

The cause was referred to a master in chancery to take the testimony and report his conclusions. The master reported that the Hubers were not members of or stockholders in the North Avenue Building and Loan Association; that the loan was not made to them by said association but was made by Kemper, who, in making it, used $8185.88 of the association's funds; that such use was without the authority of the association, and did not make it, in whole or in part, a loan by the association; that after the loan was made by Kemper the association purchased, or attempted to purchase, the securities as an investment; that the transactions were beyond the powers of the association, and the title to the trust deed and note did not pass to it but remained in Kemper, charged in equity with a trust in favor of the association. The master further reported that Kemper had a right to foreclose the trust deed but would be required to account to the association for the proceeds received from the foreclosure. The master found and reported the amount due, principal, interest and $200 attorney fees, to be $20,165; that Kemper, as trustee for the association, had a lien on the premises described in the trust

deed for the said sum, and recommended a decree of fore-closure. Objections and exceptions to the master's report were overruled and a decree entered in accordance with the master's recommendations. The Appellate Court modified the decree as to the amount allowed for master's fees and in some other small matters, and as modified affirmed the decree of the circuit court.

The act under which the defendant in error building association was organized authorized it to loan its funds only to members of the association, and no loan was au-thorized to be made by the association in any sum in excess of the amount of stock held by the borrowing member. It is contended, however, by the association, that the loan was not made by it but was made by William Kemper and that the association bought the securities as an investment. This was the conclusion of the master, and the decree of the circuit court and the judgment of the Appellate Court affirming the decree of foreclosure were based upon that theory. It is conceded the association was unauthorized to make loans to anyone except members of and stockholders in the association, but it is contended that the loan was made by Kemper, and that by the purchase of it from him the equitable title to it passed to the association; that the legal title remained in Kemper in trust for the use and benefit of the association, and said association had a right to have the trust deed foreclosed by Kemper as such trus-tee and for its use. Considering the loan as having been made by Kemper to the Hubers, the association had no more authority to purchase it than it would have had to make it in the first instance. The power of the association in loaning its money was expressly limited by the statute to making loans to its members, only, and this excluded the power to purchase notes of persons not members of the as-sociation. The attempted purchase of the note and trust deed was therefore unauthorized and *ultra vires.*

In *National Home Building Ass'n* v. *Bank,* 181 Ill. 35, a building association exchanged real estate it had lawfully acquired with a party for other real estate and assumed the payment of a mortgage on the real estate it acquired in the trade.    Afterward the board of directors of the association passed a resolution that the assumption clause in the deed was made without authority and directed the execution and a tender back to the grantor of a quit-claim deed for the property.    This was done but the deed was not accepted. The holder of the note filed a bill to foreclose and asked for a decree against the building and loan association for any deficiency that might exist.    This was resisted by the association on the ground that the clause assuming the mortgage was inserted in the deed without its knowledge and authority and was *ultra vires,* and that it had tendered back a quit-claim deed to the party from whom the conveyance was made.    The circuit court entered a decree of foreclosure and for any deficiency that might exist against the association.    This court reversed the decree for a deficiency on the ground that building associations have no power to acquire or hold real estate except such as has been mortgaged to them, and held the purchase of the property and assumption of the mortgage thereon were acts beyond the powers of the corporation.    The contention of the holder of the incumbrance that the corporation had received the benefit of its contract and was estopped to raise the question of *ultra vires* was fully discussed, and it was held the case did not fall within the class of cases to which that doctrine is applicable.    In part the court said:    "It would be contradictory to say that a contract is void for an absolute want of power to make it and yet it may become legal and valid as a contract, by way of estoppel, through some other act of the party under such incapacity or some act of the other party chargeable by law with notice of the want of power."    The court quoted with approval from *Central Transportation Co.* v. *Pullman Palace*

*Car Co.* 139 U. S. 24, that all contracts made by a corporation beyond the scope of its powers are unlawful and void and no action can be maintained on them. The court further quoted from the same case: "The view which this court has taken of the question presented by this branch of the case, and the only view which appears to us consistent with legal principles, is as follows: A contract of a corporation which is *ultra vires* in the proper sense,—that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature,—is not voidable, only, but wholly void and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity or be the foundation of any right of action upon it. When a corporation is acting within the general scope of the powers conferred upon it by the legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are pre-requisites to its existence or to its action, because such pre-requisites might, in fact, have been complied with. But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation nor the other party to the contract can be estopped, by assenting to it or by acting upon it, to show that it was prohibited by those laws." This court pointed out the distinction between cases where the act of the corporation was beyond the powers conferred upon it by law, and cases where the act was within the scope of its powers but where there was a failure to comply with some regulation or where the power was improperly exercised. In *Steele* v. *Fraternal Tribunes,* 215 Ill. 190, it was held if a contract with a corporation is beyond the powers conferred upon it by law, neither the cor-

270 — 6

poration nor the party dealing with it can be estopped to raise the question of *ultra vires.*

It seems clear under the decisions in this State, that if the trust deed had been made to secure a loan to the Hubers by the association no right to foreclose it would have been created. Is the association in any better position because the trust deed was made to secure a loan by Kemper and the securities purchased of him by the association? The association is in a court of equity asking equitable relief. Its alleged right to claim such relief grows out of its attempt to do an act which it had no authority to do. If it should be held, as insisted upon, that by the transaction the association became the equitable owner of the securities while the legal title still remained in Kemper, as trustee, for its use, and that by the transaction it became entitled to a foreclosure of the trust deed, it would establish a rule that the association could do indirectly what it is prohibited by law from doing directly. It is true, the Hubers have never paid the note and their moral obligation to pay it may be unaffected by the defense here interposed, but that would not justify holding the association is entitled to enforce payment by the remedy here sought to be pursued. Whatever the remedy of the association may be, we do not think it is by way of foreclosure in a court of equity. As said in *National Home Building Ass'n* v. *Bank, supra:* "No action can be maintained upon the unlawful contract, and in such cases, if the courts can afford any remedy, it cannot be done by affirming or enforcing the contract, but in some other manner." See, also, *Central Transportation Co.* v. *Pullman Palace Car Co. supra.*

In our opinion the decree of the circuit court and the judgment of the Appellate Court were erroneous, and they are reversed and the cause remanded.

*Reversed and remanded.*