### In re GARDEN CITY PARLOR FURNITURE CO.

### RUSNAK v. COMMERCE TRUST CO.

(Circuit Court of Appeals, Seventh Circuit.   October 5, 1920.)

No. 2610.

1. **Corporations** ⊂═487(1)—**Assignment of accounts to secure ultra vires loan by corporation invalid, and accounts not collectible by it.**

Assignments of accounts, made in pursuance of a contract for the purchase of accounts which was in fact a loan with the accounts as collateral security, and which loan was void because beyond the powers of the loaning corporation, are themselves void, and do not entitle the corporation to collect amounts of such accounts, even to the extent of reimbursing itself for the money loaned.

2. **Equity** ⊂═66—**Equity does not protect possession wrongfully obtained from receiver or trustee; who comes into equity must do equity.**

Collection of money by the assignee of the accounts of a bankrupt under void assignments, after the receiver in bankruptcy and the trustee were appointed, was wrongfully taking possession of such collections from an officer of the court or from the trustee, and such wrongful possession does not authorize retention of the funds to the extent of the loans to the bankrupt, under the maxim that the trustee, coming into a court of equity, must do equity.

Alschuler, Circuit Judge, dissenting.

Petition to Review and Revise an Order of the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Involuntary proceeding in bankruptcy against the Garden City Parlor Furniture Company, bankrupt.   On the finding of the District Court that the Commerce Trust Company was entitled to retain, from amounts received by it on claims assigned by the bankrupt, sufficient sums to reimburse it for money advanced to the bankrupt, with interest, Samuel Rusnak, as trustee in bankruptcy, brings petition to review and revise.   Finding reversed, and cause remanded, with directions.

⊂═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Jacob G. Grossberg, of Chicago, Ill., for petitioner.
L. A. Stebbins, of Chicago, Ill., for respondent.

Before BAKER, ALSCHULER, and PAGE, Circuit Judges.

PAGE, Circuit Judge. This is a petition to review and revise the finding of the District Court of the Northern District of Illinois in favor of the respondent upon the following facts:

The Garden City Parlor Furniture Company, an Illinois corporation, was adjudged a bankrupt on an involuntary petition filed April 4, 1916. On April 5th the Central Trust Company was appointed receiver of the estate and assets of the bankrupt. Respondent, a corporation under the general incorporation laws of Illinois, was chartered for the purposes shown in the agreed statement of facts filed in this case and set out hereinafter.

Bankrupt and respondent entered into the following agreement:

"Articles of agreement, entered into at Chicago, Illinois, this 2d day of January, A. D. 1915, between Garden City Parlor Furniture Company, an Illinois corporation, hereinafter designated as first party, and Commerce Trust Company, an Illinois corporation, hereinafter designated as second party, witnesseth, that whereas, the first party is desirous of selling to second party contracts, accounts receivable, and choses of action, hereinafter designated as accounts, evidencing shipments of personal property: Now, therefore, in consideration of the premises, the parties agree as follows:

"First. Second party agrees to buy the accounts belonging to first party which are acceptable to the second party and pay therefor in cash and services the following: Cash, 98 per cent. of the face value (less all deductions taken by the debtor) of all accounts or parts or installments thereof that are paid to the second party within 30 days. On accounts, parts of accounts, or installments not so paid within 30 days, the said 98 per cent. shall be reduced by 1 per cent. for each additional period of 30 days, or a fraction thereof, that such accounts, parts, or installments thereof shall remain unpaid to second party.

"Services.—Second party shall make or cause to be made such credit investigations and audits and take such other steps as it deems necessary for the protection of itself and the first party. First party agrees to and does hereby accept said cash and services as full consideration for the sale of said accounts. Said cash shall be paid at the time following: 76 per cent. of the face value of said accounts upon acceptance of the same by the second party, the balance upon the payment of said accounts, to the second party: Provided, however, that no portion of such balance need be paid so long as any accounts purchased hereunder shall be in default.

"Second. First party agrees to buy from second party on demand all accounts purchased as aforesaid that are in default and to pay second party the face value thereof.

"Third. The term default as used in this contract is construed to mean the nonpayment of an account to second party at maturity; insolvency of the debtor; failure or refusal of debtor to accept, receive and retain the property evidenced by such an account. First party agrees to pay to second party all expenses and attorney's fees incurred by second party in and about the collection of any account in default.

"Fourth. It is agreed that, contemporaneously with the purchase of accounts, first party shall assign and set over to second party such accounts purchased by it, to the end that second party shall be and become subrogated to all of the rights possessed by first party in respect thereto. Second party shall have the right to indorse the name of first party on all evidences of shipment or payment pertaining to accounts purchased hereunder. First party shall make entries upon its books disclosing the sale to second party

of accounts purchased hereunder, and all records pertaining thereto shall at all times be open to the inspection of the second party.

"Fifth. It is expressly understood that the purchase of accounts by the second party is made upon representations in writing concerning the financial responsibility of the first party, statements of which are to be furnished second party once every calendar year.

"Seventh. This agreement and all its provisions shall inure to and become binding upon the heirs, executors, administrators, successors, and assigns of the parties hereto.

"In witness whereof, the parties hereto have caused these presents to be executed on the day and year first above written."

## On the back of which was printed the following:

"The following guaranty and waiver is to be signed by individuals:

"In consideration of the sum of one ($1.00) dollar and other valuable considerations paid by Commerce Trust Company to each of the undersigned, receipt of which is hereby acknowledged, they and each of them do hereby jointly and severally guarantee to Commerce Trust Company, its successors or assigns, the full, prompt, and faithful payment, performance and discharge by Garden City Parlor Furniture Company of each of the provisions and conditions of the agreement on reverse side hereof, or any other instrument given or executed in pursuance thereof.

"The undersigned hereby jointly and severally waive all notice or default by first party, and waive notice of acceptance of this guaranty by Commerce Trust Company, its successors or assigns.

"In witness whereof, we have hereunto set our hands and seals this 2d day of January, A. D. 1915."

On May 22, 1916, the adjudication in bankruptcy was made, and petitioner Rusnak was elected trustee. He filed his petition in the bankruptcy proceeding, in which he alleged that prior to the filing of the petition bankrupt had executed a certain instrument purporting to be an assignment of accounts payable to the said bankrupt aggregating many thousands of dollars to the Commerce Trust Company; that such assignments were merely given as security for certain usurious loans; that respondent had no authority to loan money or receive security therefor; that the assignments were ultra vires and void; that respondent, since the filing of the petition in bankruptcy, had made collections on the void assignments of moneys that were the property of the trustee; that there were certain accounts unpaid, and respondent was proceeding to collect them. Petitioner prayed that respondent be required to make answer to the petition, and be ordered to account for moneys collected under the purported authority of such assignments since the filing of the petition in bankruptcy, and also be required to pay all moneys so collected to petitioner; that respondent be restrained from making further collections.

Respondent filed its answer to the petition, and also filed a cross-petition. The cross-petition prayed for an accounting by the trustee in bankruptcy and by the receiver, and that the trustee in bankruptcy should be enjoined from making further collections.

The following agreed statement of facts presents fully the facts in this case:

"On January 2, 1916, the Garden City Parlor Furniture Company, an Illinois corporation, entered into a contract with the Commerce Trust Company,

a corporation organized under the general incorporation laws of the state of Illinois (a copy of which contract is hereto attached, marked Exhibit A, and made a part hereof), and pursuant to the terms of said contract the said Garden City Parlor Furniture Company executed various assignments of its accounts receivable to said Commerce Trust Company, as hereinafter set forth, and said Commerce Trust Company paid to said Garden City Parlor Furniture Company certain sums of money therefor, as hereinafter set forth.

"The purpose for which said Commerce Trust Company was formed, as set forth in its charter, was 'to buy and sell choses in action and other personal property of every kind, nature and description; to borrow money, assign, mortgage or otherwise pledge or charge any or all of its property or property rights owned and held by it; to issue corporate obligations and to secure the payment of moneys borrowed; to do a general brokerage and commission business, and to enter into and carry out contracts for all lawful purposes. This statement of purposes shall not include the business of real estate brokerage or banking.'

"On the date of the filing herein of the involuntary petition to adjudge said Garden City Parlor Furniture Company a bankrupt, on April 4, 1916, the Commerce Trust Company had in its possession assignments of accounts receivable of said Garden City Parlor Furniture Company, made and delivered in pursuance to the terms of the aforesaid contract, amounting to $8,602.78 (an itemized list of which is hereto appended, marked Exhibit B, and made a part hereof).

"In consideration of the assignment of said $8,602.78 of accounts receivable, the said Commerce Trust Company had paid in cash to said Garden City Parlor Furniture Company before the filing of the petition herein to adjudge said company a bankrupt, pursuant to the terms of the aforesaid contract, 76 per cent. of the said sum, of $6,538.11. Five per cent. interest on the said sum of $6,538.11 from April 4, 1916, to March 12, 1917, is $306.93.

"Subsequent to the filing of said involuntary petition on April 4, 1916, the said Commerce Trust Company has proceeded to collect said accounts receivable and has collected on said accounts the sum of $5,270.97. (An itemized list, showing the amounts and dates of such collections is hereto appended, marked Exhibit C, and made a part hereof.)

"Said Commerce Trust Company still holds assignments of uncollected accounts receivable amounting to $3,331.81. (An itemized list of which is hereto appended, marked Exhibit D, and made a part hereof.)

"The average due date of said collections is July 20, 1916, and interest at 5 per cent. on the aforesaid sum of $5,270.97 from said date to March 12, 1917, is $169.84.

"On April 5, 1916, the Central Trust Company of Illinois was appointed receiver for the said Garden City Parlor Furniture Company, and from time to time thereafter debtors whose accounts had been assigned as aforesaid to said Commerce Trust Company remitted moneys due on said accounts to said Garden City Parlor Furniture Company, and said receiver collected and held said moneys so remitted, and refused to turn over said moneys to the Commerce Trust Company.

"Of the aforesaid balance of $3,331.81 of assignments of accounts receivable, held by said Commerce Trust Company, said receiver has collected $1,453.86 (an itemized list of which is hereto appended, marked Exhibit E, and made a part hereof), and still holds said amount, less exchange thereon, amounting to $3.35.

"Of the said balance of uncollected accounts receivable the assignments of which are held by the Commerce Trust Company, the trustee herein, Samuel Rusnak, has collected $40.05, being an account for that amount of M. Kaplan, of Scranton, Pa.

"Subsequent to the filing of said involuntary petition on April 4, 1916, the said Commerce Trust Company has from time to time received remittances from debtors of the said Garden City Parlor Furniture Company, in payment of accounts receivable not owned by said Commerce Trust Company or assigned to it. Said Commerce Trust Company has applied said moneys so received towards the partial satisfaction of the moneys alleged by it to be

due from said bankrupt, and as a set-off to the moneys collected as aforesaid by the receiver and trustee herein. The moneys so collected by said Commerce Trust Company amount to $456.21 (an itemized list of which is hereto appended, marked Exhibit F, and made a part hereof). The average due date of said money so collected is August 4, 1916, and interest at 5 per cent. on said sum from said date to March 12, 1917, is $13.81."

The referee found that the contract was not, as it purported to be, a contract of sale of accounts, but that it was in fact a loaning contract, and the transactions thereunder were a series of loans, with accounts receivable transferred as collateral security, and that, as loaning transactions, the contract was illegal and ultra vires the Commerce Trust Company. The referee found that the respondent had a right to collect and apply the accounts until the actual advances thereon, with interest at 5 per cent., were repaid to respondent, and that the trustee and receiver should be enjoined from making collections on the assigned accounts until respondent had collected its account in full, and directed the receiver, though not a party, to pay over the money collected by it, with interest thereon, to respondent. The prayer of the trustee was wholly denied, except as to any accounts remaining after respondent's advances, with 5 per cent. interest, were repaid, and relief granted on the cross-petition of the respondent. The District Judge affirmed the referee's findings.

Necessity for discussion of the facts is very much narrowed because of the concession and assertion of respondent that the alleged sale contract was and is void, and because respondent has staked its whole case upon two alleged facts, which it claims were reciprocal, co-ordinate, and contemporaneous: First, respondent paid bankrupt a sum of money; second, bankrupt made and delivered to respondent, and respondent had in its possession at the time of the bankruptcy, various assignments of the accounts receivable of the bankrupt. The conditions present two questions:

[1] (1) Were the so-called assignments valid? While it is probably true that the respondent, at the time it paid the money to the bankrupt, received the various assignments of accounts, yet it seems to have overlooked the fact that it is provided in the agreement that—

"First party agrees to and does hereby accept said cash and services as full consideration for the sale of said accounts."

and:

"Fourth. It is agreed that contemporaneously with the purchase of accounts, first party shall assign and set over to second party such accounts purchased by it."

This binds up the assignment with and makes it a part of the agreement as fully as though its words had been written into the body of the agreement. Consequently the assignments were just as void as the agreement. Although respondent held the assignments, they were as void and useless in its hands as though they had never been written.

[2] (2) Should the rule that he who seeks equity must do equity be applied to petitioner? The trustee's petition was limited solely

to the receivables covered by the purported assignments and uncollected at the time of the filing of petition in bankruptcy. Upon the filing of the petition and the appointment of the receiver, all property rights of the bankrupt passed under the jurisdiction of the court; and when the trustee was appointed the title and right to possession vested in him, and it was at all times after the appointment of the receiver in the possession of the court. This extended to book accounts and receivables. Of the accounts in question under the petition, respondent had no possession at the time of the filing of the petition in bankruptcy. The intention of the bankrupt that it should have them was not the equivalent of possession, ·and no possession taken after the filing of the petition in bankruptcy could avail respondent. In re Jules & Frederic Co. (D. C.) 193 Fed. 533; Edison Co. v. Tibbetts, 241 Fed. 468, 154 C. C. A. 300; State Bank of Chicago v. Cox, 143 Fed. 91, 93, 74 C. C. A. 285. It not only could not avail respondent anything, but was a wrongful· invasion of the rights of the court's officers, which rights the court was bound to protect.

Even if the assignment had been valid, it is conceded that it was only as collateral security and was not a sale, and under such circumstances an attempt to take possession without the consent of the bankruptcy court would be wrongful. One may not take the law into his own hands, and acquire possession by force or by a wrongful act, and then invoke the aid of a court of equity to maintain him in that possession. It would lead to a strange anomaly in the law to hold, upon a petition by the trustee, brought to protect him against the violations of his rights as an officer of the court by the wrongful act of the respondent, that, because the trustee is seeking to protect his rights against such wrongful acts, the court must grant him no relief whatever, but is compelled, under the rule that he who seeks equity must do equity, not only to give the respondent the fruits of his wrongdoing, but as was done in this case, give him affirmative relief by way of injunction against the trustee, and by way of an order upon the receiver, not only to pay over money which the receiver had rightfully collected, but to pay·interest thereon as well. In re Grand Union Co., 219 Fed. 353, 135 C. C. A. 237.

The prayer of the trustee in his petition should have been allowed, and it is ordered that the finding of the District Court should be reversed, and the cause remanded, with directions to proceed in harmony with this opinion.

ALSCHULER, Circuit Judge (dissenting). I find myself unable to concur in the conclusion of the majority of the court that the equitable rule that "he who seeks equity must do equity" does not here have controlling application.

It has been definitely determined that transactions such as these, while purporting on their face to be sales of accounts, are in fact loans upon the security of the accounts so purporting to be sold. Apart, therefore, from the question of the power of a corporation

organized under the general corporation act of Illinois to make loans, the transactions here, while purporting to be sales of accounts, are in law loans upon the security of the assigned accounts. But in Illinois any loan of money by such a corporation is ultra vires the corporation, and a void transaction, and cannot as a loan be enforced. Mercantile Turst Co. v. Kastor, 273 Ill. 332, 112 N. E. 988; Calumet Dock Co. v. Conkling, 273 Ill. 318, 112 N. E. 982, L. R. A. 1917B, 814; North Ave. Bldg. Ass'n v. Huber, 270 Ill. 75, 110 N. E. 312, Ann. Cas. 1917B, 587; Nat'l Home Bldg. & Loan Ass'n v. Home Savings Bank, 181 Ill. 35, 54 N. E. 619, 64 L. R. A. 399, 72 Am. St. Rep. 245. While money advanced on such an attempted loan may be, with legal interest, recovered back as money had and received (Leigh v. American Brake Beam Co., 205 Ill. 147, 68 N. E. 713; Brennan v. Gallagher, 199 Ill. 207, 65 N. E. 227), it has been decided in Illinois that its courts will not assist such a loaner in his attempt to realize upon security he may have taken in such a transaction (Calumet Dock Co. v. Conkling, supra; North Ave. Bldg. Ass'n v. Huber, supra). But the Illinois courts have not in respect to such transactions decided against the very generally accepted principle that, where one invokes the aid of a court of equity respecting a given transaction, relief will be granted him only upon condition of his doing equity towards the other party.

The trustee here filed his petition setting forth that the transaction in question was in law a loan of moneys on the security of assigned accounts, but alleging that the transaction was void for lack of power in the loaner to engage therein. The transaction itself, treated as a loan, if carried out according to its terms, would have given the loaner compensation for the use of its money far greater than permitted by the Illinois usury laws. The trustee invoked the aid of the equity (bankruptcy) court to have this contract, purporting to be a sale, declared a loan, and as a loan void under the laws of Illinois, and asked the court to prevent the loaner from claiming or interfering with the assigned accounts, and to restrain the loaner from collecting same and from preventing the trustee's collection thereof, and for an accounting for whatever accounts the loaner had collected since the bankruptcy.

To my mind this presents a typical case of a party going into equity for relief, and thereby placing himself in position where, in order to obtain it, he must do what is equitable, which, in my judgment, is here nothing less than to repay whatever was actually advanced on the faith of the assignment of these accounts, with 5 per cent. interest, or, what is the same thing, and as decreed by the District Court, to retain the accounts assigned on the faith of the money advanced until the loaner realized thereon the actual advances made, plus lawful interest only, reassigning any accounts then remaining.

It is not important that the Illinois courts would not assist such a corporate loaner at its own first instance to realize on the security taken. In the administration of this equity it frequently and properly happens that the conditions imposed upon the complaining par-

ty, as equitable terms on which only the relief will be granted, are such as neither in law nor in equity would in the first instance be accorded to the opposite party upon his own original complaint. Story on Equity Jurisprudence (13th Ed.) pp. 65-66; Pomeroy on Equitable Jurisprudence, § 386; Broatch v. Boysen, 236 Fed. 516, 149 C. C. A. 568 (8 C. C. A.); Shafer v. Spruks, 225 Fed. 480, 140 C. C. A. 504 (3 C. C. A.); Jenson v. Toltec Ranch Co., 174 Fed. 86, 98 C. C. A. 60 (8 C. C. A.); De Walsh v. Braman, 160 Ill. 415, 43 N. E. 597; Galbraith v. Tracy, 153 Ill. 54, 38 N. E. 937, 28 L. R. A. 129, 46 Am. St. Rep. 867; Chambers v. Jones, 72 Ill. 275. A court of bankruptcy is a court of equity in the broadest sense of the term, and, once within its jurisdiction, parties may be compelled to do equitable things, which even chancery courts with their usual powers might not have the right to require. Hurley v. Atchison, T. & S. F. Ry., 213 U. S. 126, 29 Sup. Ct. 466, 53 L. Ed. 729; Atchison, T. & S. F. Ry. v. Hurley, 153 Fed. 503, 82 C. C. A. 453 (8 C. C. A.); In re Chase, 124 Fed. 753, 59 C. C. A. 629 (1 C. C. A.); Conklin v. U. S. Shipbuilding Co. (C. C.) 123 Fed. 913.

Under the laws of Illinois choses in action are assignable either absolutely or as security, just as much as are goods and chattels. Chicago Title & Trust Co. v. Smith, 158 Ill. 417, 41 N. E. 1076; Hurd's Rev. Stat. Ill. c. 110, § 18; Hiberian Banking Ass'n v. Chicago, 178 Ill. App. 138; Salt Fork Coal Co. v. Eldridge Coal Co., 170 Ill. App. 268. To my mind the denial here of the application of the rule of doing equity as a condition of granting relief would work as palpable an inequity as for some irresponsible person to go to some mercantile establishment and borrow money on the security of his watch or other chattel, and then, because the establishment happens to be an Illinois corporation, lawfully incapable of making a loan to another, recover back the security without being required as a precedent condition to repay the amount obtained on the faith of the security. The mere statement of such a case to my mind manifests the injustice it would entail.

But, beyond the to me clear applicability here of this equitable doctrine, the trustee takes the estate subject to all equities between the bankrupt and others, against which an execution creditor could not have prevailed. Section 47a, Bankruptcy Act; Collier on Bankruptcy (11th Ed.) p. 728; 2 Remington (2d Ed.) §§ 1138, 1270; In re Richheimer, 221 Fed. 16, 136 C. C. A. 542 (7 C. C. A.); In re Pittsburg Big-Muddy Coal Co., 215 Fed. 703, 132 C. C. A. 81 (7 C. C. A.).

Where accounts have been assigned as security for loans an execution creditor of the assignor cannot in Illinois reach the accounts. Hitt v. Ormsbee, 14 Ill. 233; Lay v. Myers, 181 Ill. App. 614. Where the estate comes into bankruptcy, the broad equitable powers of the bankrupt court should in my judgment recognize and protect the equity of one who, on the faith and strength of the supposed security, has enhanced the estate by the amount of the loan to the bankrupt, quite regardless of whether the proceedings in the bankruptcy court respecting the transaction were first instituted by

the one party or the other. Hurley v. Atchison, T. & S. F. Ry., supra;' Atchison, T. & S. F. Ry. v. Hurley, supra; In re Chase, supra; Conklin v. U. S. Shipbuilding Co., supra.

I am of the belief that substantial equity was effected by the District Court's decree, and that it should stand.