### HANDELSMAN v. CHICAGO FUEL CO.

### In re ANNA LOAN & IMPROVEMENT CO.

(District Court, E. D. Illinois. June 10, 1925.)

No. 2181.

1. **Building and loan associations** &#9758;3—**Failure to file certificate in statutory time no defense to private person in case of de facto corporation.**

While, under building and loan statutes of Illinois, requiring association to file its certificate of organization in two years, and providing that otherwise it ceases to be a corporation and has no right to exercise any charter powers, its failure so to file prevents its becoming a corporation de jure and would be fatal on a direct attack by the state on its legal existence, such failure cannot be invoked as a defense by a private party; the circumstances being such as to establish a corporation de facto, it having for years transacted business and exercised all the franchises of a building and loan corporation, and been prima facie authorized so to do, and there having been no deception or misleading action as against those with whom it did business.

2. **Building and loan associations** &#9758;28—**Loan to corporation to construct dwellings for employees ultra vires and void.**

Building associations being under Illinois statutes organized solely to make loans to homesteaders, to enable them to buy or build homes for their families, corporation organized under general law may not become member of association, and loan by association to it for construction of dwellings for employees is ultra vires and void.

3. **Building and loan associations** &#9758;41 (2)—**Recovery as for money had and received in case of void loan.**

While loan by building and loan association to corporation for construction of dwellings for employees, and likewise mortgage security

therefor, is invalid, association may recover as general creditor against corporation for the money it received and used, with legal interest, as for money had and received.

In Equity. Suit by Jacob Handelsman against the Chicago Fuel Company. In the special matter of the intervening petition of the Anna Loan & Improvement Company. Petitioner allowed its general claim against the receivers.

Whitnel, Whitnel & Browning, of East St. Louis, Ill., for petitioner.

Brown, Fox & Blumberg, of Chicago, Ill., and Fred B. Penwell, of Danville, Ill., for receivers.

LINDLEY, District Judge. Upon a bill in equity receivers were appointed for the Chicago Fuel Company, hereinafter termed the corporation. The receivership is still pending. The Anna Loan & Improvement Company, hereinafter termed the association, organized under the building and loan statute of the state of Illinois, filed its intervening petition for leave to foreclose its certain mortgages, aggregating $10,000, executed prior to the receivership by the Victory Collieries Company, the then owner of the premises included in said mortgages, and now a part of the assets of the Chicago Fuel Company. It is alleged in the petition that the mortgages constitute first liens upon certain lots and houses built with the proceeds of the loan. The association is organized under the building and loan statutes of the state of Illinois, which requires such an association to file for record, with the recorder of deeds of the proper county, its certificate of organization within two years, and provides that unless such action is taken it ceases to be a corporation and has no right to exercise any of the powers conferred by its charter. The statute further provides that such association shall be organized for the purpose of making loans to persons with which to build homesteads. The Victory Collieries Company, to whom the loan was made, was a coal-mining corporation, and used these funds to build tenant houses for its miners. It is contended by the receivers that such a corporation cannot become a member of a building association; that the mortgages were therefore beyond the power of the association and are utterly void. The certificate of the association was not filed with the recorder of deeds within the time required by law. The receivers contend that this failure is fatal to the legal existence of the association. The facts show that the loans were made in

good faith, and that the Victory Collieries Company received the funds and used the same in making the improvements. The questions raised will be discussed separately.

[1] 1. The failure to record the certificate from the secretary of state's office prevented the association from becoming a corporation de jure. This has been definitely decided by the Supreme Court of Illinois in People v. Mackey, 255 Ill. 144, 99 N. E. 370. That proceeding, however, was one in quo warranto brought by the state, and there is nothing in the Illinois decisions, other than the dictum in Africani Association v. Carroll, 267 Ill. 380, 108 N. E. 322, which would warrant the announcement of a rule that the doctrine may be invoked by way of defense by a private party, where the circumstances are such as to amount in law to the establishment of a corporation de facto. "From the authorities, * * * it appears that the requisites to constitute a corporation de facto are three: (1) A charter or general law under which such a corporation as it purports to be might lawfully be organized; (2) an attempt to organize thereunder; and (3) actual user of the corporate franchise. * * * In proceedings where the question whether a corporation exists or not arises collaterally, the courts will not permit its corporate character to be questioned, if it appear to be acting under color of law, and recognized by the state as such. * * * And the rule, we apprehend, would be no different if the Constitution itself prescribed the manner of incorporation. Even in such a case, proof that the corporation was acting as such, under legislative action, would be sufficient evidence of right, except as against the state, and private parties could not enter upon any question of regularity." Tulare Irrigation v. Shepard, 185 U. S. 1, 22 S. Ct. 531, 46 L. Ed. 773. There the court definitely established the rule that, where a de facto corporation exists, none but the state can call its de jure existence into question.

The facts in the present case are such as to bring it within the rule announced in B. & P. Railroad Co. v. Fifth Baptist Church, 137 U. S. 568; 11 S. Ct. 185, 34 L. Ed. 784. There the court said: "But the certificate of incorporation, as originally drawn up, taken in connection with the other evidence now introduced, * * * is clearly competent and sufficient, as between these parties, to prove that the plaintiff had in good faith attempted to legally organize as a corporation, and had long acted as such, and was at least a corporation de facto, which is all that is necessary to enable it to maintain an action against any one, other than the state, who has contracted with the corporation, or who has done it a wrong." The Illinois courts generally follow the rule announced in these cases and appear to be firmly committed to their doctrine. See Lurton v. Jacksonville Ass'n, 187 Ill. 141, 58 N. E. 218; North Ave. Ass'n v. Huber, 270 Ill. 75, 110 N. E. 312, Ann. Cas. 1917B, 587. For this reason any dicta or any indications to the contrary by implication should be ignored. It follows that, though the failure to record the certificate would be fatal in an action brought by the state in a direct attack upon the association's legal existence, yet under the facts peculiar to this case, the association having transacted business as a building and loan corporation for years, having exercised all of the franchises of such a corporation, having been prima facie authorized so to do, and there having been no deception or misleading action as against the persons with whom it did business, the doctrine of the cases above quoted from control and the petitioner's legal existence cannot be attacked in this proceeding.

It is contended that in the case of Elgin Nat. Watch Co. v. Loveland (C. C.) 132 F. 41, the court held that the right to attack the legality of incorporation of a building association under the law of Illinois extended to private parties. In discussing the question the court there said that, as the alleged user consisted only of such acts or proceedings as might have been exercised without incorporation, a corporation de facto would not be inferred therefrom. But the facts in the present case are not of such character. Here the acts could in a strict sense of the word be performed only by a building and loan association. Hence all the facts essential to the creation of a corporation de facto exist.

[2, 3] 2. It appears that the loans made by the association were made to a corporation organized under the general law of Illinois. Building associations are under the statutes of Illinois organized solely for the purpose of making loans to homesteaders, in order to enable them to purchase or build homes for their families. Loans to nonmembers are utterly void. The question whether a corporation organized under the general law may become a member of a building and loan association for the purpose of borrowing money for the construction of dwellings for employees seems always to have been avoided by the Supreme Court of Illinois,

for in the case of Kadish v. Garden City Ass'n, 151 Ill. 531, 38 N. E. 236, 42 Am. St. Rep. 256, the Supreme Court said that the question as to whether a corporation for manufacturing purposes should be allowed to become members of homestead loan associations and whether such association should be allowed to loan money for general business purposes were not decided, as their decision was not necessary to the determination of the case. But in the case of Standard Savings & Loan Ass'n v. Aldrich, 163 F. 216, 89 C. C. A. 646, 20 L. R. A. (N. S.) 393, decided by the Circuit Court of Appeals for the Sixth Circuit, Judge Lurton, afterwards Mr. Justice Lurton, commented fully upon the character of such associations and the proper interpretation of statutes limiting their power. In that case one building association had attempted to become a member of another association and to borrow from the latter funds needed in its business. The terms of the Michigan statute are almost identical with those of that of Illinois. It was held that the contract was beyond the scope of the power of the Michigan association, expressed or implied, that a corporation could not become a member of such an association, and that the contract could not be enforced by any remedy. The court held, further, that to enlarge the power of the association by any rule of estoppel would be contrary to the public policy, citing Calif. Bank v. Kennedy, 167 U. S. 363, 17 S. Ct. 831, 42 L. Ed. 198, and McCormick v. Market Bank, 165 U. S. 538, 17 S. Ct. 433, 41 L. Ed. 817. The court used this language: "The doctrine of ultra vires, by which a contract made by a corporation beyond the scope of its corporate powers is unlawful and void, and will not support an action, rests, as this court has often recognized and affirmed, upon three distinct grounds: The obligation of any one contracting with a corporation to take notice of the legal limits of its powers; the interest of the stockholders not to be subject to risks which they have never undertaken; and, above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law. Pearce v. Madison & Indianapolis Railroad, 21 How. 441, 16 L. Ed. 184; Pittsburgh, etc., Railway v. Keokuk & Hamilton Bridge Co., 131 U. S. 371, 384, 9 Sup. Ct. 770, 33 L. Ed. 159; Central Transportation Company v. Pullman's Palace Car Co., 139 U. S. 24, 48, 11 Sup. Ct. 478, 35 L. Ed. 55." See, also, Fritze v. Equitable Building & Loan Soc., 186 Ill. 183, 57 N. E. 873; Free Ass'n v. Edwards, 223 Ill. 126, 79 N. E. 64; Calumet

Co. v. Conkling, 273 Ill. 318, 112 N. E. 982, L. R. A. 1917B, 814; Lurton v. Jacksonville Bldg. Ass'n, 187 Ill. 141, 58 N. E. 218.

In Home Association v. Bank, 181 Ill. 35, 54 N. E. 619, 64 L. R. A. 399, 72 Am. St. Rep. 245, the association traded one property for another, assuming in the deal for the latter a mortgage indebtedness thereon. In a suit to collect on said clause, the court held that the assumption agreement was beyond the powers of the association and void. The court said: "It is also argued that the building and loan association is estopped to raise the question whether the contract was ultra vires, because it has received the benefit of the contract by the conveyance of property to it. That depends, as we think, upon the sense in which the term 'ultra vires' is used. It has been applied indiscriminately to different states of fact in such a way as to cause considerable confusion. When used as applicable to some conditions, it has been frequently said that a corporation is estopped to make such a defense where it has received the benefit of the contract. For example, the term has been applied to acts of directors or officers which are outside and beyond the scope of their authority, and therefore are invasions of the rights of stockholders, but which are within the powers of the corporation. In such a case the act may become binding by ratification, consent and acquiescence, or by the corporation receiving the benefit of the contract. Again, it has been applied to cases where an act was within the authority of the corporation for some purposes or under some circumstances, and where one dealing in good faith with the corporation had a right to assume the existence of the conditions which would authorize the act. Where an act is not ultra vires for want of power in the corporation but for want of power in the agent or officer, or because of the disregard of formalities which the law requires to be observed, or is an improper use of one of the enumerated powers, it may be valid as to third persons. In the more proper and legitimate use of the term it applies only to acts which are beyond the purpose of the corporation, which could not be sanctioned by the stockholders. There would, of course, be no power to confirm or ratify a contract of that kind, because the power to enter into it is absolutely wanting. If there is no power to make the contract there can be no power to ratify it, and it would seem clear that the opposite party could not take away the incapacity and give the contract vitality by doing something under it. It would be contradictory to say that

a contract is void for an absolute want of power to make it and yet it may become legal and valid as a contract, by way of estoppel, through some other act of the party under such incapacity, or some act of the other party chargeable by law with notice of the want of power."

In Endlich, Building Association (2d Ed.) 323, the author says: "It certainly does not appear to be consistent with the purposes of a building association's being, nor in any wise related to the policy which justifies the creation of these institutions, with the extraordinary powers they possess, to have its membership in part composed of corporations, and there can be little doubt that the statutes never contemplated such a departure." See, also, Fritze v. Equitable Building & Loan Soc., 186 Ill. 183, 57 N. E. 873; North Ave. Ass'n v. Huber, 270 Ill. 75, 110 N. E. 312, Ann. Cas. 1917B, 587. From the reasoning of the authorities generally it would seem that this loan to a corporation was not merely ultra vires, in the loose sense in which that term is sometimes used, but was a contract beyond the power of the association, and therefore wholly void.

However, it appears that the borrowing corporation received the money and used it in constructing buildings to be used in the promotion of its corporate purposes. There is no question but that in these circumstances it would be inequitable and wrong to allow the same to be retained. As Mr. Justice Lurton said in Standard Savings Ass'n v. Aldrich, supra: "Although the managers of the Michigan association had no power to borrow money for such purposes, yet, to the extent that the money has not been expended or has been paid out in discharge of legitimate obligations of the association, it would be unjust and inequitable that it should not be held accountable. * * * This right of recovery is based upon an implied promise to return the money or property so received or to make compensation to the extent that it has actually benefited by its application to the discharge of actual liabilities incurred in the legitimate course of business."

In Travelers' Ins. Co. v. Mayor, 99 F. 663, 40 C. C. A. 58, 49 L. R. A. 123, speaking for the court, Judge Taft, now Chief Justice, said: "Such an action is based, not on an express or implied contract, but upon an obligation which the law supplies from the circumstances, because, ex æquo et bono, the defendant should pay for the benefit which he has derived at the expense of the plaintiff. It is an obligation which the law supplies, because otherwise it would result in the unjust enrichment of the defendant at the cost of the plaintiff. It is an obligation which arises only when the defendant has received money or property from the plaintiff and appropriated the same to his own use, either when he might have elected not to take it, or, having the power to do so, might return the benefit thus conferred to the plaintiff, and fails to do so."

In Central Transportation Co. v. Pullman Co., 139 U. S. 24, 11 S. Ct. 478, 35 L. Ed. 55, a corporation leased all of its assets to another. The lease was held void and not capable of ratification on the basis of estoppel. However, the court held that the contract might be abandoned and recovery had on a quantum meruit for the benefits grantee had received; that a contract of a corporation which is beyond the powers conferred upon it by the Legislature is not voidable only, but wholly void; that it cannot be ratified by either party; and that no performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it. The court said: "The clear result of these decisions may be summed up thus: The charter of a corporation, read in the light of any general laws which are applicable, is the measure of its powers, and the enumeration of those powers implies the exclusion of all others not fairly incidental. All contracts made by a corporation beyond the scope of those powers are unlawful and void, and no action can be maintained upon them in the courts, and this upon three distinct grounds: The obligation of every one contracting with a corporation, to take notice of the legal limits of its powers; the interest of the stockholders, not to be subjected to risks which they have never undertaken; and, above all, the interest of the public, that the corporation shall not transcend the powers conferred upon it by law. * * * The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it. * * * A contract ultra vires being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the par-

ties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case, however, *the action is not maintained upon the unlawful contract,* nor according to its terms; but on an implied contract of the defendant to return, or, failing to do that, to make compensation for, property or money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm, the unlawful contract. The ground and the limits of the rule concerning the remedy, in the case of a contract ultra vires, which has been partly performed, and under which property has passed, can hardly be summed up better than they were by Mr. Justice Miller in a·passage already quoted, where he said that the rule 'stands upon the broad ground that the contract itself is void, and that nothing which has been done under it, nor the action of the court, can infuse any vitality into it;' and that, 'where the parties have so far acted under such a contract that they cannot be restored to their original condition, the court inquires if relief can be given independently of the contract, or whether it will refuse to interfere as the matter stands.' Pennsylvania R. Co. v. St. Louis, A. & T. H. R. Co., 118 U. S. 317, 30 L. Ed. 94." See, also, Mercantile Trust Co. v. Kastor, 273 Ill. 332, 112 N. E. 988.

It follows, from what has been said, that the association has a right to recover its funds. which the corporation has received and the benefit of which the corporation has had, not because there was any legality in the contract made, for that is void and unenforceable. The association has a right to a judgment against the corporation for the money that it received and used. The security—that is, the mortgage—has no validity; the loan contract has no validity; but the action is, in its essence, one for money had and received. Therefore the recovery is not in accordance with the contract, but one based upon an implied agreement to return the funds received plus legal interest; that is, 5 per cent. per annum, less, however, the sums that have heretofore been paid, with interest calculated upon the same basis from the respective dates of the payments. The order of the court will be, therefore, that the association be allowed its general claim against the receivers, calculated in the manner indicated, and the petition to foreclose the mortgage be denied. A proper order may be prepared, with the correct calculations, and the same will thereupon be entered.